**Lana PALLAS, Plaintiff–Appellant,**

v.

**PACIFIC BELL; Pacific Telesis, et al., Defendants–Appellees.**

No. 90–15559.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 15, 1991.

Decided Aug. 12, 1991.

---

Maria Blanco, Equal Rights Advocates, and Robert Hirsch, Van Bourg, Weinberg, Roger & Rosenfeld, San Francisco, Cal., for plaintiff-appellant.

C. Douglas Floyd, Pillsbury, Madison & Sutro, San Francisco, Cal., for defendants-appellees.

Before SCHROEDER and FARRIS, Circuit Judges, and DUMBAULD,* District Judge.

SCHROEDER, Circuit Judge:

Lana Pallas filed this suit against her employer, Pacific Bell, and its predecessor companies (collectively "Pacific Bell"), claiming that the company has discriminated against her on the basis of gender and pregnancy. Pacific Bell denied her retirement benefits in 1987 based on a method of calculating employee service time that does not credit pregnancy leaves taken prior to 1979 but credits temporary disability leaves taken during the same period. Pallas brought this action under the Pregnancy Discrimination Act provisions of Title VII, 42 U.S.C. §§ 2000e *et seq.;* ERISA, 29 U.S.C. §§ 1001 *et seq.;* and the California Fair Employment and Housing Act, Cal.Gov't Code §§ 12900 *et seq.*

The district court interpreted Pallas's complaint to allege only that discrimination occurred prior to 1979, when the law did not require employers to treat pregnant women like temporarily disabled men. *See General Electric Co. v. Gilbert,* 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976). Thus, the district court dismissed the complaint for failure to state a federal claim. Because we hold that the complaint states a claim for discrimination occurring in 1987 when Pacific Bell denied Pallas retirement benefits, we reverse. *See Bazemore v. Friday,* 478 U.S. 385, 106 S.Ct. 3000, 92 L.Ed.2d 315 (1986).

* Honorable Edward Dumbauld, Senior United States District Judge for the Western District of Pennsylvania, sitting by designation.

## FACTS

In 1987, Pacific Bell instituted a new retirement benefit for management employees called the "Early Retirement Opportunity." To qualify for the benefit, an eligible employee must have accrued twenty years of service. The company measures an employee's length of service by a "net credited service" system. Under this system, an employee receives credit for time during which the employee is absent due to a temporary disability, but does not receive credit for time spent on personal leave. Prior to enactment of the Pregnancy Discrimination Act, Pacific Bell required employees disabled by pregnancy to take personal leaves. After 1979, Pacific Bell changed its policy to allow employees with pregnancy-related disabilities to take disability leaves. Under the current "net credited service" system, employees disabled by pregnancy prior to 1979 do not receive service credit for their pregnancy-related leaves.

Pallas, who had been employed by Pacific Bell and its predecessor companies since 1967, applied for the Early Retirement Opportunity. By letter dated October 11, 1988, the company informed her that she was not eligible for the benefit because, as a result of a pregnancy-related leave she took in 1972, she was three to four days short of the necessary amount of service credit. This suit followed.

## DISCUSSION

■ The Pregnancy Discrimination Act amended Title VII to redress discrimination based on a woman's pregnancy. *See* 42 U.S.C. § 2000e(k); *Newport News Shipbuilding & Dry Dock Co. v. EEOC,* 462 U.S. 669, 684, 103 S.Ct. 2622, 2631, 77 L.Ed.2d 89 (1983) ("The Pregnancy Discrimination Act has now made clear that, for all Title VII purposes, discrimination based on a woman's pregnancy is, on its face, discrimination because of her sex"). The Act requires employers to treat pregnancy disabilities in the same manner as other temporary medical disabilities for "all employment-related purposes, including receipt of benefits under fringe benefit programs." 42 U.S.C. § 2000e(k).[1]

The district court dismissed Pallas's Title VII claim on the basis of a series of Supreme Court decisions interpreting a special provision of Title VII concerning seniority systems, 42 U.S.C. § 2000e–2(h). *See, e.g., Lorance v. AT & T Technologies, Inc.,* 490 U.S. 900, 109 S.Ct. 2261, 104 L.Ed.2d 961 (1989); *United Air Lines, Inc. v. Evans,* 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977). In this line of decisions, the Supreme Court held that disparate impacts resulting from a bona fide seniority system that is facially neutral must be challenged within the statute of limitations from the time the system is adopted; with a facially neutral system, the discriminatory act occurs at the time of adoption and subsequent applications do not constitute continuing violations. *See Lorance,* 490 U.S. at 911–13, 109 S.Ct. at 2268–69; *Evans,* 431 U.S. at 557–58, 97 S.Ct. at 1888–89.

The district court erred in relying on *Evans* and its progeny. These cases are inapposite in two determinative respects. First, the discriminatory program which

---

1. Section 703(a) of Title VII provides that it is an "unlawful employment practice" for an employer:

   (1) ... to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

   (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e–2(a). Congress amended Title VII in 1978 to provide that:

   [t]he terms "because of sex" or "on the basis of sex" include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes, including receipt of benefits under fringe benefit programs, as other persons not so affected but similar in their ability or inability to work. . . .

42 U.S.C. § 2000e(k) (Pregnancy Discrimination Act).

gave rise to this suit, the Early Retirement Opportunity, was instituted in 1987. This is not a belated attempt to litigate the discriminatory impact of a pre-Pregnancy Discrimination Act program. Pallas challenges the criteria adopted in 1987 to determine eligibility for the new benefit program. The claim could not have been brought earlier. Second, the net credit system used to calculate eligibility under the Early Retirement Opportunity is not facially neutral. The system used to determine eligibility facially discriminates against pregnant women. The system distinguishes between similarly situated employees: female employees who took leave prior to 1979 due to a pregnancy-related disability and employees who took leave prior to 1979 for other temporary disabilities.

The controlling Supreme Court precedent is *Bazemore v. Friday,* 478 U.S. 385, 106 S.Ct. 3000, 92 L.Ed.2d 315 (1986). In *Bazemore,* the employer had, prior to the enactment of Title VII, maintained two separate, racially segregated work forces and paid whites more than blacks. The Court held that pay disparities which remained after the enactment of Title VII were unlawful. "Each week's paycheck that delivers less to a black than to a similarly situated white is a wrong actionable under Title VII, regardless of the fact that this pattern was begun prior to the effective date of Title VII." 478 U.S. at 395–96, 106 S.Ct. at 3006. Although the employer was not liable for acts of discrimination that occurred prior to the enactment of Title VII, the Court held that an employer could be held liable for discrimination perpetuated after the Act took effect. *Id.* at 395, 106 S.Ct. at 3006.

In 1987, Pacific Bell instituted a program that adopted, and thereby perpetuated, acts of discrimination which occurred prior to enactment of the Pregnancy Discrimination Act. While the act of discriminating against Pallas in 1972 is not, itself, actionable, Pacific Bell is liable for its decision to discriminate against Pallas in 1987 on the basis of pregnancy. Pallas's complaint states a valid claim under Title VII.

For similar reasons, the district court erred in dismissing Pallas's claims under the California Fair Employment and Housing Act, Cal.Gov't. Code §§ 12900 *et seq.* The FEHA is based on Title VII, making it an unlawful business practice to "refuse to allow a female employee affected by pregnancy, childbirth or related medical conditions ... [t]o receive the same benefits or privileges of employment granted by that employer to other persons not so affected ... including to take disability or sick leave...." Cal.Gov't Code § 12945(b)(1). Because Pallas has stated a Title VII claim, she has also stated a claim under the FEHA.

Pallas has also stated a claim cognizable under ERISA. Pallas challenges the manner in which the Early Retirement Opportunity program was applied to her. Calculation of the service term for purposes of eligibility in the program is an act subject to review for breach of fiduciary duty. *Menhorn v. Firestone Tire & Rubber Co.,* 738 F.2d 1496, 1502–03 (9th Cir.1984). Pallas alleges that Pacific Bell breached its fiduciary duty by failing to act in the interests of plan participants. Discrimination constitutes a fiduciary breach for purposes of ERISA. *See, e.g., Elser v. I.A.M. National Pension Fund,* 684 F.2d 648 (9th Cir.1982), *cert. denied,* 464 U.S. 813, 104 S.Ct. 67, 78 L.Ed.2d 82 (1983). The allegations in the complaint are sufficient to support an ERISA claim.

The judgment of the district court is REVERSED and the case is REMANDED.

DUMBAULD, District Judge, dissenting:

Respectfully, and regretfully, I dissent. Appellant portrays to us, in the words of an English poet,

"a melancholy tale

Of things done long ago, and ill-done."[1]

In my interpretation of Congressional legislation[2] and authoritative case

---

**1.** From memory, I think John Ford was the author of these lines.

**2.** See 42 U.S.C. 2000e(k), 2000e–2(a) and 2000e–2(h), which will be discussed more fully hereinafter.

law[3] we confront a situation which we have *no power* to alleviate or remedy. The appellee telephone company has simply applied a seniority system,[4] which it uses as the criterion for according many kinds of employee benefits, and appellant simply did not have enough seniority to qualify for the early retirement which she sought.

A seniority system is simply a method of record-keeping and mathematical calculation which determines how long an employee has worked for the employer. Economics has been called "the dismal science" and a rigorous economist might exclude all time not spent by the employee on actual productive work. Sound public policy and even corporate self-interest, however, surely permit the inclusion of time off work due to job-related injuries or unhealthful working conditions, or, indeed, any disease, disability, or other medical condition preventing the employee from performing his or her job in normal fashion. The telephone company's plan in the case at bar has always included medical leave but excluded personal leave in computing seniority.

The problem involved in the case at bar stems from the fact that up until legislation enacted by Congress in 1978[5] the company counted pregnancy leave for women employees as personal leave, not as medical leave.[6] Such action was then not unlawful. Upon enactment of the 1978 law the company began, and continues, to count pregnancy leave as medical leave.

The authoritative case law requires *current* unlawful discrimination in order to

support a title VII violation. *Bazemore, supra,* upon which the majority relies, makes plain that "While recovery may not be permitted for pre–1972 acts of discrimination, to the extent that this discrimination was perpetuated after 1972, liability may be imposed." 478 U.S. at 395, 106 S.Ct. at 3006. In *Bazemore* actual disparity between black and white employees with respect to pay continued to exist. In Justice Brennan's trenchant phrase, "Each week's paycheck that delivers less to a black than to a similarly situated white is a wrong actionable under Title VII, regardless of the fact that this pattern was begun prior to the effective date of Title VII." In *Bazemore* there was a *current discrimination* being practiced.

In the case at bar, by contrast, all that the telephone company is currently doing is applying a bona fide seniority system, which is not discriminatory on its face, and is specifically authorized by Congress.[7] Such current activity of the company, as previously stated, consists simply of examination of the company's records and adding up the time the employee has worked for the company, as disclosed by those records. Neither we nor the telephone company can erase or change history. We cannot, like the Communists' comical claims that they invented all useful inventions now in common use, alter or falsify the past. The company can say, with Pontius Pilate, "What I have written, I have written."[8] Or, as eloquently stated in the familiar passage of the Rubaiyat:

> At the time [of appellant's pregnancy in 1972], Pacific Telephone's policies required disabled pregnant employees to take personal leaves instead of disability leaves. Persons temporarily disabled for reasons other than pregnancy were given disability leaves while they were unable to work.

---

**3.** See *United Airlines v. Evans,* 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977), and *Bazemore v. Friday,* 478 U.S. 385, 106 S.Ct. 3000, 92 L.Ed.2d 315 (1986), which will be discussed more fully hereinafter.

**4.** Surviving from its predecessor company before the celebrated antitrust case resulting in the breakup of the old A.T. & T. system. See *U.S. v. Western Electric Co., et al.,* 552 F.Supp. 131 (D.D.C.1982), aff'd. 460 U.S. 1001, 103 S.Ct. 1240, 75 L.Ed.2d 472 (1983); further opinions in 569 F.Supp. 990 (1983), and 569 F.Supp. 1057 (1983).

**5.** Act of October 31, 1978, 92 Stat. 2076, 42 U.S.C. 2000e(k).

**6.** As explained in appellant's brief (p. 5):

**7.** See note 2, *supra.*

**8.** Jn. 19:22. It is true that the company did adjust appellant's record to give her several more days (but not enough to qualify her for the early retirement she sought). I think this adjustment simply accepted her doctor's opinion of when she was able to return to work rather than the company doctor's. To contend that such an adjustment defeats the company's general reliance on its non-discriminatory seniority plan reminds me of those courts which in my

The Moving Finger writes; and, having writ,

Moves on: nor all your Piety nor Wit
    Shall lure it back to cancel half a Line,
Nor all your Tears wash out a Word of it.[9]

Appellant's grievance is one that belongs to history; it is not a current violation of law.[10] Currently there is no discrimination between pregnant and non-pregnant women, nor between pregnant women and men with a sex-specific ailment such as prostate condition (which was mentioned at argument), or men with other mutually available medical reasons for absence from work. Hence I would affirm on the Title VII claim.[11]

I agree with the majority on the ERISA claim.

law school days treated a special appearance to object to the jurisdiction of the court as constituting an acceptance of its jurisdiction over the merits of the case.

9. The Rubaiyat of Omar Khayyam (Fitzgerald, tr.) Stanza 71.

10. The situation in the case at bar can be illustrated by a hypothetical case. Suppose that appellant were a graduate of Harvard Law School, and that three years after women were first admitted to Harvard Law School, she sought election to the imaginary office of Historian of the Alumni Association, to be eligible for which post the by-laws for over a quarter of a century and without any specific sexual animus have provided that only alumni of five years' standing or more are eligible. [Assume *arguendo* also that such a requirement is reasonable (like minimum age for service in the Congress), and also that it would now be unlawful to exclude women from the School but was not prior to the year when they were first admitted during the deanship of Erwin Griswold]. Is it not plain that simply as a matter of chronology she would be ineligible for lack of the five years' standing required for election to that office?

11. As Judge Schroeder states, "the parties agree that the same legal analysis" applies to appellant's claims under California legislation.