Jacquelyn CARTER, Plaintiff,

v.

AMERICAN TELEPHONE AND
TELEGRAPH COMPANY,
et al., Defendants.

No. C–1–92–424.

United States District Court,
S.D. Ohio,
Western Division.

Dec. 16, 1994.

Douglas Michael Morehart, Brown & Morehart, Cincinnati, OH, for plaintiff.

Ronald Harold Isroff, Ulmer and Berne, Cleveland, OH, Thomas Louis Rosenberg, Columbus, OH, for defendants.

## ORDER

SPIEGEL, District Judge.

This matter is before the Court on the Defendants' Motion for Summary Judgment (doc. 22), Plaintiff's Motion for Summary Judgment and Response to Defendants' Motion for Summary Judgment (doc. 27), Defendants' Reply (doc. 31), and Plaintiff's Reply (doc. 32).

The Plaintiff, Jacquelyn Carter, filed this law suit alleging that her employer, American Telephone and Telegraph Company (hereinafter "AT & T"), discriminated against her by denying her credit for time served while she was pregnant. AT & T denied her retirement benefits in 1991 based on a method of calculating employee service time that does not take into account pregnancy leaves, but does take into account disability leaves taken during the same period. On May 19, 1992, Carter filed her complaint seeking the payment of certain pension benefits under the AT & T Management Pension Plan. Carter alleges that the actions of AT & T violate the Pregnancy Discrimination Act provisions of Title VII, 42 U.S.C. §§ 2000e *et seq.*, the Equal Pay Act, 29 U.S.C. § 206(d), Ohio Rev.Code §§ 4112.02(A) and 4112.99, and ERISA, 29 U.S.C. §§ 1001 *et seq.*

## BACKGROUND

On December 30, 1989, AT & T instituted a new retirement benefit plan to encourage employees to take early retirement. Under this plan, AT & T credited anyone who wished to retire with five extra years of service or age, which allowed employees easier access to pension benefits.

Carter was employed by AT & T from June 8, 1964, until December 28, 1990, and was seventeen years old when she began work. She took maternity leave from December 19, 1966, until October 1, 1967. At the time Carter took leave, she was six months pregnant. AT & T policy required all employees to take leave once they became six months pregnant, and allowed the employee to take leave for up to one year. AT & T, however, only gave Carter one month credit for her leave. Therefore, AT & T adjusted Carter's service date for benefits and seniority to February 21, 1965.

Thus, when AT & T included the enhancement provision, Carter was treated as being 48 years old and having 29 years and 10 months of service. These numbers were frozen, and the employee could decide to use these or use their real numbers when they retired. In order to qualify for immediate pension payments under the enhancement provisions of December 1989, one must have 30 years of service or have attained the age of 50, including the additional five years, at the time the enhancement provision was enacted. Otherwise, one must wait until she is sixty five in order to obtain her pension benefits. Therefore, because Carter was given only one month credit for her pregnancy leave, she only had 29 years and 10 months of service at the requisite date. Carter was forty four years old when she was terminated, and would have started receiving pension immediately had she been credited with the pregnancy leave time. Because AT & T gave Carter only one month credit, she must now wait until she is 65 to begin receiving pension benefits.

When Carter retired she signed a release that terminated her rights to bring a lawsuit against the company. The release, however, specifically reserves the employee's rights for benefit claims under the pension plan.

## STANDARD OF REVIEW FOR SUMMARY JUDGMENT

The narrow question that we must decide on a motion for summary judgment is whether there exists a "genuine issue as to any material fact and [whether] the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Supreme Court elaborated upon the appropriate standard in deciding a motion for summary judgment as follows:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2549, 91 L.Ed.2d 265 (1986).

■ The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-movant's case. *Id.* at 321, 106 S.Ct. at 2551; *Guarino v. Brookfield Township Trustees*, 980 F.2d 399, 405 (6th Cir.1992). If the moving party meets this burden, then the non-moving party "must set forth specific facts showing there is a genuine issue for trial." Fed.R.Civ.P. 56(e). *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552; *Guarino*, 980 F.2d at 405. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). The judge's function is not to weigh the evidence and determine who has presented the stronger case, but rather solely to determine whether a genuine issue exists for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). "If the evidence is merely colorable or is not significantly probative, summary judgment may be

granted." *Id.* at 249–50, 106 S.Ct. at 2511 (internal citations omitted).

## DISCUSSION

I. *Plaintiff Has Not Waived Her Right To Bring This Lawsuit*

■ Upon termination, the Plaintiff signed a Termination Agreement and Release (hereinafter "Release") in exchange for $5,015.73. The Defendants argue that the signing of the Release prevents the Plaintiff from filing this lawsuit. However, paragraph 6 of the Release provides:

> I understand that this Termination Agreement and Release in no way affects any rights I may have for benefits under the AT & T Management Pension Plan or any other applicable AT & T benefit plan.

The Plaintiff in this case has filed suit because she has been denied benefits under the AT & T Pension Plan. This is exactly the exception that was provided for in the release, and thus, the Defendant's argument lacks merit and Plaintiff has properly filed this lawsuit.

II. *The Plaintiff Has a Valid Claim Under Title VII*

A. Defendant's Discrimination on the Basis of Plaintiff's Pregnancy Violates Title VII.

The Pregnancy Discrimination Act of 1978 amended Title VII to redress discrimination based upon a woman's pregnancy. See 42 U.S.C. § 2000e(k); *Newport News Shipbuilding & Dry Dock Co. v. EEOC*, 462 U.S. 669, 684, 103 S.Ct. 2622, 2631, 77 L.Ed.2d 89 (1983) ("The Pregnancy Discrimination Act has now made clear that, for all Title VII purposes, discrimination based on a woman's pregnancy is, on its face, discrimination because of her sex."). The Act requires employers to treat pregnancies in the same manner as any other temporary medical disability for all employment related purposes. 42 U.S.C. § 2000e(k).[1]

---

1. 42 U.S.C. 2000e(k) provides in pertinent part: [t]he term "because of sex" or "on the basis of sex" include, but are not limited to, because of or on the basis of pregnancy, childbirth ... and women affected by pregnancy, childbirth or related medical conditions shall be treated the same for all employment-related purposes, *including receipt of benefits* under fringe benefit programs, as other persons not so affected

■ The Defendants claim that, because the Pregnancy Discrimination Act was enacted in 1978, it does not apply to discrimination that occurred in 1967. For this proposition the Defendants cite *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977), *American Tobacco Co. v. Patterson*, 456 U.S. 63, 102 S.Ct. 1534, 71 L.Ed.2d 748 (1982) and *United Air Lines, Inc. v. Evans*, 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977). These cases are distinguishable and do not apply in the pregnancy discrimination context. *Pallas v. Pacific Bell*, 940 F.2d 1324, 1326 (9th Cir.1991).

In *Teamsters*, the Defendant's had a seniority system that on its face treated African–Americans, Hispanics and whites the same. The Supreme Court found that while the seniority system was neutral, it was administered with discriminatory intentions. *Teamsters*, 431 U.S. at 337, 97 S.Ct. at 1855. While the Supreme Court held that present discriminatory practices must be rectified, it found that the fact that whites held the best positions in the company, as a result of pre-Title VII discrimination, could not be remedied. *Id.* at 352, 97 S.Ct. at 1863 ("In sum, the unmistakable purpose of § 703(h) was to make clear that the routine application of a bona fide seniority system would not be unlawful under Title VII. As the legislative history shows, this was the intended result even where the employer's pre-Act discrimination resulted in whites having greater existing seniority rights than Negroes."). The Supreme Court reasoned that Title VII should not outlaw the use of existing seniority lists, thus watering down the seniority rights of existing employees "simply because their employer had engaged in discrimination prior to the passage of the act." *Id.* at 353, 97 S.Ct. at 1863.

In *Patterson*, the Equal Employment Opportunity Commission and African–American employees filed suit alleging the employer had a racially discriminatory seniority system. 456 U.S. at 66–7, 102 S.Ct. at 1536–37. The Supreme Court held that if the seniority system is neutral on its face, the fact that it

may include "pre-Title VII" discrimination does not make it unconstitutional. *Id.* at 77, 102 S.Ct. at 1541. In other words, as in *Teamsters*, the High Court reasoned that the enactment of Title VII was not meant to demolish existing seniority systems, but rather to make sure that from the day of the act forward all systems would be applied in a race neutral manner. *Id.* at 75–7, 102 S.Ct. at 1541. Once again, the High Court reasoned that Title VII was not meant to punish employees who had nothing to do with the discrimination, but rather to correct the discriminatory practices of employers. *Id.*

Finally, in *Evans*, the plaintiff filed suit alleging that her separation from employment in 1968 violated Title VII, and thus, when United Airlines rehired her in 1972, they must credit her with seniority for any period prior to her re-hiring. 431 U.S. at 554, 97 S.Ct. at 1887. The break in service rules, however, applied the same for men and woman. *Id.* at 558, 97 S.Ct. at 1889. Therefore, the system was applied in a neutral manner and no Title VII violation existed. *Id.*

■ These cases are distinguishable from the present case for a number of reasons. *See, e.g., Pallas, supra,* 940 F.2d at 1327. First, the purpose of enacting the Pregnancy Discrimination Act was to clarify that discrimination on the basis of pregnancy violated Title VII. *See Newport News Shipbuilding and Dry Dock v. EEOC*, 462 U.S. 669, 679 n. 17, 103 S.Ct. 2622, 2629 n. 17, 77 L.Ed.2d 89 (1983) ("H.R. 5505 does not really add anything to title VII.as I and, I believe, most of my colleagues in Congress when title VII was enacted in 1964 and amended in 1972, understood the prohibition against sex discrimination in employment. For, it seems only common sense, that since only women can become pregnant, discrimination against pregnant people is necessarily discrimination against women, and that forbidding discrimination based upon sex therefore clearly forbids discrimination based on pregnancy.") (quoting remarks of Rep. Hawkins, 123 Cong.Rec. 10581 (1977)). The enactment of the statute did not per se establish the date

---

but similar in their ability or inability to work. . . .

(emphasis added).

when violations based on pregnancy were illegal, but instead just clarified the fact that they were always illegal under Title VII. Therefore, unlike the racial seniority cases, Title VII and the principles underlying the Pregnancy Discrimination Act were already in place when Ms. Carter began her employment at AT & T.[2]

■ Both the enhancement system enacted by AT & T and AT & T's denial of credit for pregnancy leave violate Title VII. As the Sixth Circuit has stated, "[a]lthough the Supreme Court in *Nashville Gas Co. v. Satty*, 434 U.S. 136 [98 S.Ct. 347, 54 L.Ed.2d 356] (1977), held that pregnancy related distinctions utilized in employment policies are not per se violations of Title VII, such holding does not prevent the plaintiff from showing disparate treatment 'designed to effect an invidious discrimination' to which Title VII does apply." *Fields v. Bolger*, 723 F.2d 1216, 1219 (6th Cir.1984) (citing *Nashville Gas*, 434 U.S. at 143–44, 98 S.Ct. at 352) (quoting *General Electric Co. v. Gilbert*, 429 U.S. 125, 136, 97 S.Ct. 401, 408, 50 L.Ed.2d 343 (1976)). In *Nashville Gas*, a unanimous Supreme Court held that a seniority system that credited employees for temporary disability leave, but did not credit woman for pregnancy leave violated Title VII. 434 U.S. at 142, 98 S.Ct. at 351.[3] Similarly, in this case AT & T's system credits employees for temporary disability leave but not for temporary pregnancy leave. Title VII requires that men and woman be treated alike, and when a company is allowed to enact a plan that distinguishes pregnancy from other temporary disabilities it violates the principles underlying Title VII. Moreover, AT & T re-

quired women to leave after six months of pregnancy, but refused to give them more than one month of credit for this forced leave. Therefore, the company forced woman to leave solely because they were pregnant, and refused to give them credit for the time they were gone. Since pregnancy is an immutable factor that is peculiar only to woman, to treat it differently by applying a separate leave policy is sex discrimination. Thus, AT & T's enhancement plan incorporated disparate treatment based solely on gender, and such incorporation violates Title VII. *See Wetzel v. Liberty Mutual Ins. Co.*, 511 F.2d 199 (3d Cir.1975) (holding that forced maternity leave violates Title VII).

■ Second, even assuming that the PDA made discrimination based upon pregnancy illegal for the first time, the discriminatory program which gave rise to this suit was not instituted until 1989. Therefore, Ms. Carter is not attempting to litigate a program that was created prior to the Pregnancy Discrimination Act (PDA). Carter is challenging the criteria used in the 1989 program to determine who is entitled to enhanced pension benefits. AT & T's program incorporated past discrimination on the basis of a woman's pregnancy into the present program. Therefore, the present program violates the PDA. *See Pallas*, 940 F.2d at 1327 (holding that program which incorporates past discrimination on the basis of pregnancy violates Pregnancy Discrimination Act).

■ Third, the enhancement system used by AT & T is not facially neutral. "The system used to determine eligibility facially discriminates against pregnant woman."

---

**2.** The Defendant argues that *Los Angeles Dep't of Water and Power v. Manhart*, 435 U.S. 702, 98 S.Ct. 1370, 55 L.Ed.2d 657 (1978), *Arizona Governing Committee v. Norris*, 463 U.S. 1073, 103 S.Ct. 3492, 77 L.Ed.2d 1236 (1983), and *Florida v. Long*, 487 U.S. 223, 108 S.Ct. 2354, 101 L.Ed.2d 206 (1988) dictate that the Pregnancy Discrimination Act cannot be applied retroactively. This argument fails because the PDA is not being applied retroactively. As discussed, Title VII was in place at the time Ms. Carter took leave and the PDA had been enacted when AT & T adopted its enhancement plan in 1989. Therefore, AT & T was on notice at all times that discrimination against woman in the workplace violated Title VII, and this included discriminat-

ing against woman on the basis of their pregnancy. Thus, the concerns of the *Manhart–Long* line of cases are not present in this case.

**3.** Additionally, during the time period prior to the PDA the EEOC guidelines provided in pertinent part:

[E]mployment policies and practices involving matters such as the commencement and duration of leave, the availability of extensions, the accrual of seniority and other benefits … shall be applied to disability due to pregnancy or childbirth on the same terms and conditions as they are applied to other temporary disabilities. 29 C.F.R. § 1604.10(b).

*Pallas,* 940 F.2d at 1327; *see also Newport News, supra,* 462 U.S. at 684, 103 S.Ct. at 2631 ("[t]he Pregnancy Discrimination Act has now made clear that, for all Title VII purposes, discrimination based on a woman's pregnancy [or any other medical condition] is, on its face, discrimination because of her sex."). The system distinguishes between similarly situated employees: female employees who took leave for pregnancy-related disability and those employees who took leave for other temporary disabilities. *Id.* Therefore, it is distinguishable from the facially neutral seniority systems the High Court analyzed in *Teamsters, Patterson,* and *Evans. See Pallas,* 940 F.2d at 1326 ("In this line of decisions, the Supreme Court held that disparate impacts resulting from a bona fide seniority system that is *facially neutral* must be challenged within the statute of limitations from the time the system is adopted....") (emphasis added).

Finally, the concerns the High Court enunciated in applying Title VII retroactively in the racial seniority cases are not present here. Unlike seniority systems, if AT & T was to credit woman in the enhancement program for pregnancy leave it would not affect other employees detrimentally. Thus, other employees would not be punished for the company's past discrimination. The only thing that would happen is that a company's past or present discrimination would be rectified.

Accordingly, AT & T's pension system violates Title VII. Ms. Carter must be credited for the time she took as pregnancy leave, and with this credit she is entitled to her pension benefits under the enhancement program.

**B. The Plaintiff Filed Her Title VII Suit Within the Requisite Statutory Period.**

■ The Defendant also alleges that the Plaintiff failed to file her Title VII suit in a timely manner. 42 U.S.C. § 2000e–5(e)(1) requires a person to file a charge alleging discrimination under Title VII within three hundred days after the "alleged unlawful employment practice occurred." Section 2000e–5(e)(2) defines in part that an "unlawful employment practice" occurs when "a person aggrieved is injured by the application of the

seniority system or provision of the system." Ms. Carter did not have the system applied to her until her termination from employment, because that was the first time she was eligible for benefits. Ms. Carter was terminated from employment on December 28, 1990. In early 1991 Ms. Carter made a demand asking for immediate service pension, and then on October 11, 1991, she proceeded to file a charge of discrimination with the Equal Employment Opportunity Commission (hereinafter "EEOC"). Moreover, on November 11, 1993, AT & T's Benefit Claim and Appeal Committee made a final denial of Ms. Carter's request for Service Pension Benefits.

Therefore, this is not a belated attempt to litigate a violation of Ms. Carter's rights. She filed this suit within 300 hundred days of her termination. Only upon her termination did the new enhancement program take effect and deny her the service pension she felt she had earned. The plan did not violate her rights until the day she was denied the service pension. As the Ninth Circuit held in *Pallas,* the claim could not have been brought any earlier. 940 F.2d at 1327. Therefore, Ms. Carter filed her complaint alleging discrimination under Title VII in a timely manner.

**III. *Plaintiff Has Proven ERISA Violations***

**A. ERISA applies to the Plaintiff's claims**

The Plaintiff alleges that the Defendants violated sections 404, 409 and 502 of ERISA. To determine if ERISA applies to this case, we are guided by the relevant preemption portion of the statute. That portion of the ERISA statute provides:

(a) Except as provided in subsection (b) of this section the provisions of this subchapter ... shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title. This section shall take effect January 1, 1975.

(b)(1) This section shall not apply with respect to any cause of action which arose, or

any act or omission which occurred, before January 1, 1975.

29 U.S.C. § 1144. The Sixth Circuit has interpreted this as creating a two prong test to determine whether a Plaintiff has stated a valid cause of action under ERISA: "The application of ERISA thus depends upon: 1) a determination of the time the cause of action arose, and 2) a determination of the time of acts or omissions." *Stevens v. Employer–Teamsters Joint Council,* 979 F.2d 444, 451 (6th Cir.1992) (quoting *Rodriguez v. MEBA Pension Trust,* 872 F.2d 69, 71 (4th Cir.), *cert. denied,* 493 U.S. 872, 110 S.Ct. 202, 107 L.Ed.2d 155 (1989)). Thus, the Sixth Circuit held that under 1144(b)(1) if either "the cause of action arose" or relevant "acts or omissions" on which a pension fund is based occurred prior to January 1, 1975, ERISA does not apply.

█ In this case, Ms. Carter's cause of action arose when she was formally denied benefits, and thus, she has satisfied the first prong of the test. "An ERISA cause of action for benefits under ERISA does not arise until a claim for benefits has been made and formally denied." *Stevens,* 979 F.2d at 451. Therefore, Ms. Carter's cause of action arose in 1993, when AT & T formally and finally denied her benefits.

Ms. Carter also meets the second prong of the test as interpreted by the Sixth Circuit. To determine whether a person has met the second prong the courts must determine what "any act or omission" means and how it is to be interpreted. "Congress has given courts little guidance as to what the phrase 'any act or omission' refers, and the result is the development among the circuits of two competing views." *Id.* One view adopted by the Third, Fourth and Fifth Circuits treats the trustees' post-ERISA denial of a pension as the "act or omission" that is subject to ERISA. *See Tanzillo v. Local 617, Int'l Bhd. of Teamsters,* 769 F.2d 140, 144 (3d Cir.1985); *Rodriguez, supra; Woodfork v. Marine Cooks & Stewards Union,* 642 F.2d 966 (5th Cir.1981). Thus, under this view if the denial occurs after January 1, 1975, it constitutes both "an act or omission" and the accrual of the plaintiff's cause of action. The Fourth Circuit reasoned that this approach

was the best because "[w]hile a claim determination may require the plan's trustees to consider pre-ERISA acts, the act of denying a pension post-ERISA will invariably involve a 'contemporaneous construction of the plan's provisions ... to which ERISA's fiduciary standards apply.'" *Rodriguez,* 872 F.2d at 72 (quoting *Tanzillo* 769 F.2d at 144).

█ The Sixth Circuit, however, has declined to adopt this approach and has instead taken a broader view of what "act or omission" encompasses. *Stevens,* 979 F.2d at 451. Under the Sixth Circuit approach, "if the trustees' denial is based on events that occurred and plan provisions adopted before 1975, then the denial is not reviewable." *Id.* According to this interpretation, if the denial of plaintiff's benefits relates to an incident that occurred prior to January 1, 1975, jurisdiction does not exist under ERISA.

However, if the Defendants exercised discretion after January 1, 1975, to determine whether Ms. Carter should receive benefits, ERISA applies. "ERISA jurisdiction will not lie in cases where a pension plan denies the applicant's claim after January 1, 1975, but the plan administrator's exercised *no discretion* in so denying because the ultimate benefit decision was completely dictated by the pre–1975 events." *Id.* at 452 (emphasis added). Consequently, the relevant inquiry is whether the benefits were denied as the result of a significant act of discretion under or interpretation of a plan that took effect after ERISA's effective date. *Stevens,* 979 F.2d at 453 (quoting *Menhorn v. Firestone Tire & Rubber Co.,* 738 F.2d 1496, 1502 (9th Cir.1984)). "A plan provision requiring discretion or interpretation does not work to deny an individual benefits until specifically applied to him. A denial of benefits pursuant to such a provision thus operates simultaneously as *both* the event triggering accrual of a cause of action *and* the substantial act resulting in denial of benefits...." *Stevens,* 979 F.2d at 453 (quoting *Menhorn,* 738 F.2d at 1502–03).

In this case, the benefits plan enacted in 1989 allows for AT & T's Benefit Claim and Appeal Committee (hereinafter "Committee") to make all determinations regarding "all

questions arising in the administration of the plan" and "all questions relating to age and service for eligibility to become a participant or eligibility for a deferred vested pension, or relating to terms of employment and rates of pay for determining service pensions and other benefits." AT & T Pension Plan, §§ 3(4), 6(3)(a). In the Defendants' brief, the Defendants state that "[t]he Pension Plan clearly gives the Committee such discretionary authority...." Defendants' Motion for Summary Judgment, p. 31 (doc. 22). The Committee reviewed Ms. Carter's appeal, and the Secretary of AT & T's Benefit Claim and Appeal Committee admitted that the Committee had the authority to grant or deny Ms. Carter's pension request under the enhancement plan. The Committee appears to have reviewed various documents including the Pension Plan, Enhancement Plan, and Ms. Carter's signing of a release. After reviewing all of this, the Committee determined that Ms. Carter should not be credited for the forced pregnancy leave she took. Therefore, the Committee based their decision on much more than just whether Ms. Carter's pregnancy leave was entitled to credit in 1966 and 1967.

Additionally, this case is distinguishable from the decision in *Stevens*. In *Stevens*, the pension plan under which the Plaintiff was denied his pension was in place during the years of dispute from 1961–1966, and under that plan he was not given service credit for those years. *Stevens*, 979 F.2d at 446–49. AT & T's plan, however, was not put into place until 1989, and the Committee denied Ms. Carter any pension benefits under this new plan. Therefore, the Committee's interpretation of the 1989 enhancement plan did not take place until 1993, well after the enactment of ERISA. Such interpretation was the relevant "act", and thus, ERISA applies. *See Pallas, supra,* 940 F.2d at 1327 ("Pallas challenges the manner in which the Early Retirement Opportunity program was applied to her. Calculation of the service term for purposes of eligibility in the program is

an act subject to review for breach of fiduciary duty." (citing *Menhorn, supra,* 738 F.2d at 1502–03)).

B. Plaintiff Can Recover Equitable Relief For Defendants' Breach of Fiduciary Duty.

Under ERISA the Plaintiff requests that she be allowed to recover compensatory damages, restitution and appropriate equitable relief. The Defendants first claim that the Plaintiff failed to make mention of ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) in her complaint and only brought her allegations under ERISA §§ 404 and 409, 29 U.S.C. §§ 1104 and 1109. Defendants' assertion is incorrect. At paragraph 16 of the First Amended Complaint, Plaintiff states, "Plaintiff brings this action under 29 U.S.C. § 1132 to enforce her rights under the terms of the Pension Plan...." Therefore, Plaintiff has stated a claim under ERISA section 502(a)(3), 29 U.S.C. § 1132(a)(3).[4]

■ The Defendants further assert that according to the Supreme Court's new rulings in *Mertens v. Hewitt Associates,* — U.S. ——, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993), and *Massachusetts Mutual Life Ins. Co. v. Russell,* 473 U.S. 134, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985), Ms. Carter is not entitled to individual relief for breach of fiduciary duty. Defendants' reliance on these cases is partially misplaced.

"ERISA allows for an action to enforce and seek appropriate relief because of a breach of fiduciary duty." *Anweiler v. American Elec. Power Serv. Corp.,* 3 F.3d 986, 992 (7th Cir.1993). Section 1109 of ERISA makes "[a]ny person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries," personally liable. 29 U.S.C. § 1109(a); *see also Mertens, supra,* — U.S. at ——, 113 S.Ct. at 2066.

In *Russell,* a beneficiary sought compensatory and punitive damages for improper or

---

4. Section 1132(a) provides in pertinent part:
A civil action may be brought—
(3) by a participant, beneficiary, or fiduciary
(A) to enjoin any act or practice which violates any provision of this subchapter or the terms
of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

untimely processing of her claim for employee disability benefits. 473 U.S. at 136, 105 S.Ct. at 3087. The Supreme Court held that any recovery for a violation of section 409 goes to the plan and not a beneficiary. *Id.* at 140, 105 S.Ct. at 3089. The Supreme Court, however, went on to note that "[b]ecause respondent relies entirely on § 409(a), and expressly disclaims reliance on § 502(a)(3), we have no occasion to consider whether any other provision of ERISA authorizes recovery of extracontractual damages." *Id.* at 139 n. 5, 105 S.Ct. at 3088 n. 5. Therefore, while Ms. Carter may not be entitled to recovery under § 409(a), she can and has sought recovery under § 502(a)(3).

The Defendants cite *Mertens, supra,* claiming that Ms. Carter is not entitled to relief under § 502(a)(3). In *Mertens,* however, the Supreme Court "simply holds that only 'equitable relief' is available under Section 502(a)(3), 29 U.S.C. § 1132(a)(3), and that this phrase does not include the collection of damages from persons who are not fiduciaries but act in concert with those who are fiduciaries. Nothing in *Mertens* precludes an award of traditional equitable relief, including an injunction, restitution, and the like." *Howe v. Varity Corp.,* 36 F.3d 746, 755 (8th Cir.1994); *see also Anweiler v. American Elec. Power Service Corp.,* 3 F.3d 986, 993 (7th Cir.1993) (holding same).

Defendants further contend that an individual cannot recover for breach of fiduciary duty. However, in both *Anweiler* and *Howe,* the Seventh and Eighth Circuits held that equitable relief running to an individual falls within the scope of the language of § 1132(a)(3) (ERISA § 502(a)(3)) and ERISA's broad remedial purpose. *Anweiler,* 3 F.3d at 993 ("Therefore, in light of *Mertens* ... we hold that an individual may seek equitable relief from a breach of fiduciary duty under 1132(a)(3)."); *Howe,* 36 F.3d at 755 ("[*Mertens* ] by no means bars equitable relief for individual participants who have suffered a breach of trust.") Thus, Ms. Carter is entitled to seek "appropriate equitable relief" under 1132(a)(3).

#### C. Defendants Breached Their Fiduciary Duty.

 Defendants claim that their conduct should be reviewed under an arbitrary and capricious standard, while the Plaintiffs claim that the Court should review the Committee's determination de novo. Because Defendants' conduct violated the fiduciary standards set forth in ERISA under either standard, it is irrelevant what standard this Court applies.

 Under the standard enunciated by the Defendants this Court must review the Committee's decision "only to determine whether such decision was arbitrary, capricious, in bad faith, erroneous as a matter of law, or unsupported by substantial evidence." *Blakeman v. Mead Containers,* 779 F.2d 1146, 1149 (6th Cir.1985). As shown *supra,* the Committee's determination that Ms. Carter was not entitled to pension benefits because of her pregnancy leave violated federal law. Therefore, their decision is "erroneous as a matter of law," and fails to meet this standard. *See Pallas, supra,* 940 F.2d at 1327 ("Discrimination constitutes a fiduciary breach for purposes of ERISA"). Accordingly, under ERISA, Ms. Carter is entitled to equitable relief including restitution of the benefits she has been denied.

### IV. Equal Pay Act

 The Plaintiff has also alleged that the Defendants violated the Equal Pay Act provisions of the Fair Labor Standard Act, 29 U.S.C. § 206(d). Section 206(d) provides in pertinent part that an employer shall not discriminate between employees on the

basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs, the performance of which require equal skill, effort and responsibility and which are performed under similar working conditions....

The dispute between the parties arises over whether the term "wages" incorporates pension benefits. One district court has previously held that "pension benefits are within the scope of the Equal Pay Act." *Local 494, International Brotherhood of Electrical*

*Workers v. City of Milwaukee,* 51 Fair Empl. Prac.Cas. 984, 1989 WL 165879 (E.D.Wis. 1989). Furthermore, the Code of Federal Regulations provides:

> Under the EPA, the term "wages" generally includes all payments made to [or on behalf of] an employee as renumeration for employment. The term includes *all forms of compensation* irrespective of the time of payment, whether paid periodically or deferred until a later date, and whether called wages, salary, profit sharing, expense account, monthly minimum, bonus, uniform cleaning allowance, hotel accommodations ... or some other name. *Fringe benefits* are deemed to be renumeration for employment.

29 C.F.R. 1620.10 (1981) (emphasis added). Fringe benefits are defined to included such things as "medical, hospital, accident, life insurance and *retirement benefits....*" 29 C.F.R. 1620.11 (1981) (emphasis added). Therefore, pension benefits are a form of compensation, and from the code it appears the term "wages" was meant to encompass pension benefits.

■ In this case, Ms. Carter was denied credit for her pregnancy leave, and therefore, has not received her pension under the enhancement program. A similarly situated male employee who took three months leave for a temporary medical disability would currently be receiving his pension. In other words, any employee who worked 29 years and 10 months and took two months of temporary medical leave would receive their pension at this time. Thus, as found above, Ms. Carter is not receiving pension benefits solely because she is a woman who became pregnant. Such discrimination is a violation of Title VII and a violation of the Equal Pay Act. *See Korte v. Diemer,* 909 F.2d 954, 959 (6th Cir.1990) ("A finding of 'sex discrimination in compensation' under one Act is tantamount to a finding of 'pay discrimination on the basis of sex' under the other."). Accordingly, Ms. Carter has stated a valid claim under the Equal Pay Act.

■ Defendants further contest that this is a new rule of law. However, the Equal Pay Act has been in place since 1963 and the Code of Federal Regulations are there to guide the Defendants. Prohibiting discrimination on the basis of sex does not constitute new law.

■ Finally, the Defendants argue that the Plaintiff has failed to file within the requisite statute of limitations. An action to enforce the Equal Pay Act must be commenced within two years after the cause of action has accrued, unless the violation is willful, which then makes it a three year period. 29 U.S.C. § 255. In order for a cause of action to accrue, a final and formal denial of Plaintiff's pension benefits must occur. Consequently, Plaintiff's cause of action did not arise until 1993, when the Committee made a final denial of Ms. Carter's claim for pension benefits. Thus, Ms. Carter filed suit well within the requisite statutory period.

## V. *Ohio's Sex Discrimination Claims*

Both parties concede that because ERISA applies, the Ohio state law claims are preempted. Therefore, we need not address the Plaintiff's state law claims at this time.

## CONCLUSION

■ Accordingly, this Court hereby GRANTS the Plaintiff's Motion for Summary Judgment and DENIES Defendants' Motion for Summary Judgment. Therefore, the Plaintiff is entitled to receive the pension benefits she is seeking from the time she would have been first eligible to receive the benefits had no discrimination existed. This means the Plaintiff will receive back benefits plus interest, and future payments in accordance with the plan.

SO ORDERED.