**AMERICAN TELEPHONE AND TELEGRAPH COMPANY,
et al., Appellants,**

**v.**

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,
Appellee.**

**No. 00–5280.**

United States Court of Appeals,
District of Columbia Circuit.

Argued Sept. 10, 2001.

Decided Nov. 16, 2001.

Charles C. Jackson argued the cause for appellants. With him on the briefs were Timothy L. Porter, Laura A. Kaster and Christopher A. Weals.

Robert J. Gregory, Attorney, Equal Employment Opportunity Commission, argued the cause for appellee. On the brief were Philip B. Sklover, Associate General Counsel, and Paula R. Bruner, Attorney.

Before: GINSBURG, Chief Judge, EDWARDS and SENTELLE, Circuit Judges.

Opinion for the Court filed by Chief Judge GINSBURG.

GINSBURG, Chief Judge:

AT&T seeks a declaratory judgment against the Equal Employment Opportunity Commission to the effect that the Company is not required to give former employees credit for work time they missed due to pregnancy before passage of the Pregnancy Discrimination Act of 1979. The district court granted the Commission's motion to dismiss for want of final agency action. AT&T contends that the Commission had taken final action because, although it had not yet sued the Company, it had concluded that AT&T's policy violates the Act and had taken steps toward filing a lawsuit on that ground. We hold that course of conduct does not constitute final agency action and is therefore unreviewable.

## I. Background

The Pregnancy Discrimination Act of 1979 requires an employer to give an employee who misses work due to pregnancy the same benefits it gives an employee who misses work for other reasons, such as a disability. 42 U.S.C. § 2000e(k). Either an aggrieved employee or the Commission may sue the employer for violating the Act in district court in the state where the alleged discrimination occurred. 42 U.S.C. § 2000e-5(f)(1), (f)(3).

AT&T employees earn pension benefits based upon how long they work for the Company, including any time they miss due to disability. Since passage of the Act in 1979, AT&T also has given credit for time missed due to pregnancy. AT&T does not, however, give credit for time missed due to pregnancy before passage of the Act.

The Ninth Circuit has held that AT&T's policy regarding pre-Act time missed— which policy is followed by other former Bell System companies—violates the Act, *Pallas v. Pacific Bell*, 940 F.2d 1324 (9th Cir.1991) (holding claim of pre-Act preg-nancy discrimination both timely and correct on the merits), but the Seventh Circuit has held otherwise, *Ameritech Benefit Plan Comm. v. Communication Workers of Am.*, 220 F.3d 814 (7th Cir.2000) (holding claim of pre-Act pregnancy discrimination time-barred). The Commission agrees with the Ninth Circuit and provides in its Compliance Manual not only that "a seniority policy that treats leave for maternity purposes differently from leave for other temporary disabilities ... [is] a violation of Title VII," but also that denying full work credit for pre-Act pregnancy leave is "past discrimination" the effect of which constitutes "a present violation of Title VII." § 616.25. When the Commission updated the Manual in October, 2000 it specifically endorsed both the Ninth Circuit's decision in *Pallas* and a district court judgment to the same effect, *Carter v. AT&T,* 870 F.Supp. 1438 (S.D.Ohio 1994), *vacated by consent,* 1996 WL 656571 (S.D.Ohio).

*Pallas* and *Carter* were private actions brought by aggrieved employees. In addition, the Commission itself has sued two former Bell System companies for failing to give full work credit for pre-Act pregnancy leave. *See EEOC v. Bell Atl. Corp.,* 1999 WL 386725 (S.D.N.Y.); *EEOC v. Ameritech Serv., Inc.,* No. 97 CV 2106 (N.D.Ohio). The Commission also filed an amicus brief taking that position in the *Carter* case, *see* 870 F.Supp. 1438.

In the mid–1990s two employees of AT&T complained to the Commission that the Company refused to give them full credit for the time they had missed due to pregnancy before passage of the Act. The Commission issued to each a Letter of Determination stating that in its view AT&T had unlawfully discriminated against her. The Commission then sent letters to AT&T urging it to conciliate with the two women and informing the Compa-

ny that if conciliation failed, then the Commission would refer the matter to its legal department. In June, 1999 the Commission notified AT&T of its conclusion that conciliation indeed had failed.

AT&T then filed this suit against the Commission, seeking a declaratory judgment that the Company's service credit policy does not violate any federal law. The Commission moved to dismiss the case on the ground that the Commission's Letters of Determination are not final orders and are therefore unreviewable. The district court agreed and AT&T appealed.

## II. Analysis

The district court's authority to review the conduct of an administrative agency is limited to cases challenging "final agency action." 5 U.S.C. § 704; *Abbott Labs. v. Gardner*, 387 U.S. 136, 140, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). An agency action is deemed final if it "mark[s] the 'consummation' of the agency's decisionmaking process" and determines "rights or obligations." *Appalachian Power Co. v. E.P.A.*, 208 F.3d 1015, 1022 (D.C.Cir.2000). The agency must have made up its mind, and its decision must have "inflict[ed] an actual, concrete injury" upon the party seeking judicial review. *Williamson County Regional Planning v. Hamilton Bank*, 473 U.S. 172, 193, 105 S.Ct. 3108, 87 L.Ed.2d 126 (1985). Such an injury typically is not caused when an agency merely expresses its view of what the law requires of a party, even if that view is adverse to the party. *See DRG Funding Corp. v. HUD*, 76 F.3d 1212, 1214 (D.C.Cir.1996) ("[C]ourts have defined a nonfinal agency order as one, for instance, that 'does not itself adversely affect complainant but only affects his rights adversely on the contingency of future administrative action'") (quoting *Rochester Tel. Corp. v. United States*, 307 U.S. 125, 130, 59 S.Ct. 754, 83 L.Ed. 1147 (1939)).

AT&T acknowledges that a Letter of Determination issued by the Commission is not final agency action but argues that the entire course of the Commission's actions with respect to the Company's service credit policy, including the Letters of Determination, in the aggregate shows the agency has reached a final conclusion concerning its legal position. AT&T suggests that if even that is not enough, the Commission does not actually have to sue the Company to take final and reviewable action: Making the decision to sue is surely sufficient. In either case, the Company also maintains that it suffers actual injury from the attendant uncertainty about its ultimate legal obligation while waiting for the Commission to file suit: AT&T cannot know whether to fund its pension accounts to pay for pre-Act pregnancy leave until this legal issue is resolved.

Under the circumstances of this case, there clearly would be final agency action if the Commission filed a lawsuit against AT&T. (Of course, the Company could not challenge that decision as final agency action under the APA; it would instead simply defend itself against the suit.) At that point the agency would have decided not only how it views AT&T's legal obligations, but also how it plans to act upon that view. How then can AT&T show that the Commission has, if not formally then at least as a practical matter, taken final action when the agency has not sued, and might not ever sue, the Company?

AT&T argues that the Commission takes final action when it embraces one view of the law and rejects another, or at the latest when, after formulating its legal position, the agency decides to sue a particular company. The former argument is too broad insofar as it would reach a case such as this, in which the agency's taking a position on the law does not affect any other party. Although there are, as

AT&T points out, particular circumstances in which an agency's taking a legal position itself inflicts injury or forces a party to change its behavior, such that taking that position may be deemed final agency action, *see Appalachian Power,* 208 F.3d at 1022 (holding that "a Guidance" issued by the Environmental Protection Agency is final because it represents a settled position that the agency "plans to follow in reviewing State–issued permits, a position it will insist State and local authorities comply with in setting the terms and conditions of permits issued to petitioners, [and] a position EPA officials in the field are bound to apply"), this is not such a case. The Commission has not inflicted any injury upon AT&T merely by expressing its view of the law—a view that has force only to the extent the agency can persuade a court to the same conclusion. Unlike the EPA Guidance at issue in *Appalachian Power,* the EEOC Compliance Manual does not affect the regulated community. Whereas "EPA officials in the field [were] bound to apply" the EPA Guidance, *id.,* as discussed below the EEOC is not bound to sue AT&T.

We turn therefore to AT&T's latter point. We shall assume, without deciding, that the finality requirement would be satisfied if the Commission decided to enforce the Act against an employer but then delayed the filing of a complaint. That assumption leads us to the question: Did the Commission decide to sue AT&T?

AT&T points out that the Commission has sued two other similarly situated employers, that is, former components of the Bell System with the same policy regarding pre-Act pregnancy leave. Still, it does not follow that the agency will use its limited resources to sue them all; law enforcement agencies rarely have the ability, or for that matter the need, to bring a case against each violator. Nor does the Compliance Manual shed light upon the

Commission's intentions. It does state the Commission's view that the policy followed by AT&T violates the Act, but it does not say whether, how, against which companies, or under what circumstances the Commission will act upon that view. The Commission came nearer to taking final action when it sent Letters of Determination to AT&T, but such letters themselves clearly fall short of final agency action. *See Georator Corp. v. EEOC,* 592 F.2d 765, 768 (4th Cir.1979) (so holding); *see also Atlantic Richfield Co. v. U.S. Dep't of Energy,* 769 F.2d 771, 787 n. 107 (D.C.Cir. 1984). True, the Commission later referred to its legal department one of the matters subject to a Letter of Determination, but that was after AT&T had filed the complaint in this case and therefore is not cognizable in this litigation. *See Federal Express Corp. v. Air Line Pilots Ass'n,* 67 F.3d 961, 965 n. 5 (D.C.Cir.1995) (holding that only "the facts in existence *at the time the suit was filed*" matter) (emphasis in original); *cf., e.g., Doss v. F.C.C.,* No. 00–1124, 2000 WL 1946577, at *1 (D.C.Cir. Dec. 7, 2000) ("Petitions [for review] filed while a request for reconsideration is pending before the agency are deemed to be 'incurably premature' "). In sum, considering everything the Commission did before AT&T filed its complaint, we do not know whether it had decided to take the final step of bringing suit against AT&T.

In these circumstances, to allow AT&T to institute litigation with the Commission over the lawfulness of its policy would be to preempt the Commission's discretion to allocate its resources as between this issue and this employer, as opposed to other issues and other employers, as well as its ability to choose the venue for its litigation, as the statute contemplates. *See* 42 U.S.C. § 2000e–5(f)(1), (f)(3). For the court to find here final agency action subject to judicial review, therefore, would disrupt the administrative process in a

manner clearly at odds with the contemplation of the Congress.

### III.   Conclusion

For the foregoing reasons, the judgment of the district court is

*Affirmed.*