**Larkin T. FLOYD, Appellant,**

v.

**KELLOGG SALES COMPANY, Appellee.**

No. 87–5067.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 3, 1987.

Decided March 4, 1988.

Rehearing and Rehearing En Banc Denied April 14, 1988.

William J. Mavity, Minneapolis, Minn., for appellant.

R. Scott Davies, Minneapolis, Minn., for appellee.

Before McMILLIAN, Circuit Judge, HENLEY, Senior Circuit Judge, and FAGG, Circuit Judge.

McMILLIAN, Circuit Judge.

Larkin T. Floyd appeals from a final judgment entered in the District Court for the District of Minnesota in favor of Kellogg Sales Co. (Kellogg) in an action alleging racial discrimination and retaliatory discharge in violation of the Minnesota Human Rights Act, Minn.Stat. ch. 363 (Supp. 1988), Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., and common law promissory estoppel. For reversal, Floyd argues that the district court (1) erred in granting a motion for judgment notwithstanding the verdict (JNOV), and (2) was bound by the jury's factual finding on an issue common to the retaliation and estoppel claims. For the reasons set forth below, we affirm in part, reverse in part, and remand with directions.

**I.**

Floyd, a black male, was employed by Kellogg as a sales representative working out of its Minneapolis, Minnesota, offices from June 12, 1980, until August 19, 1983. Kellogg maintains its corporate headquarters in Battle Creek, Michigan, and is engaged in the sale and distribution of products manufactured by the Kellogg Co., a related corporation. Floyd's duties as a sales representative included promoting Kellogg products in an assigned territory within Minnesota.

This dispute arises out of a series of events leading up to Floyd's termination by Michael Townsend, a Kellogg supervisor, on August 19, 1983. Floyd claims that Townsend terminated him because he (Floyd) requested a company investigation of his complaints of racial harassment. Kellogg responds that Townsend terminated Floyd due to poor performance, and that Townsend was unaware of the investigation at the time of Floyd's termination.

The difficulties began in January 1983, when Chris Drikakis, a former Minneapolis sales representative, was placed in charge of Kellogg's Minneapolis office. Floyd claims that Drikakis made various racially derogatory remarks to Floyd throughout the early part of 1983. Although Kellogg normally evaluated its sales representatives every twelve months, Drikakis conducted a special mid-year evaluation of Floyd in April 1983 and gave Floyd an overall rating of "below average." Floyd's three previous annual evaluations had been satisfactory, and he alleged that the "below average" evaluation was the product of racial discrimination. After the April evaluation, Townsend accompanied Floyd on visits to a number of stores within Floyd's assigned sales territory on August 10, 1983. At the conclusion of this tour, Townsend expressed disatisfaction with Floyd's performance.

Floyd discussed his complaints of racial harassment on several occasions during this period of time with John Harper, Kellogg's Equal Opportunity officer. Floyd had not requested Harper to formally investigate his allegations, allegedly out of fear of reprisal. After the August 10 visit with Townsend, Floyd contacted Harper again. Harper allegedly assured Floyd that if he requested an investigation, he would not be terminated while the investigation was in progress. Floyd requested the investigation. Harper immediately attempted to contact Townsend and Frank Zorbo, Kellogg's personnel director, regarding the investigation. Townsend and Zorbo were both out of town, and Harper left word at their offices to contact him upon their return. Harper also sent interrogatories to Zorbo with instructions to forward them to Townsend.

Meanwhile, Townsend and Zorbo discussed Floyd's employment status on August 17, 1983, while attending a company meeting in Tulsa, Oklahoma. Townsend and Zorbo testified that they were not aware at this time that Floyd had requested an investigation. Townsend asked Zor-

bo if Floyd could be fired based on his April evaluation of "below average." Zorbo responded "absolutely not," and indicated that Townsend should give Floyd another performance appraisal after sixty to ninety days. Zorbo returned Harper's call sometime after returning from the Tulsa Meeting and learned of the investigation. Zorbo then forwarded Harper's interrogatories to Townsend. In his deposition Zorbo testified that he was certain that he had contacted Townsend regarding the investigation before Floyd was discharged.

On August 19, 1983, just two days after the Tulsa meeting, Townsend conducted another performance appraisal of Floyd, gave him a rating of "unsatisfactory," and fired him. Floyd protested to Townsend that Harper had promised him that he would not be terminated while the investigation was being conducted. Townsend responded that he had already spoken with Harper, and that Harper had agreed that Floyd should be fired.

Floyd brought this action alleging racial discrimination, retaliatory discharge, and promissory estoppel. Floyd alleged that Kellogg terminated him because he requested an internal investigation of his complaints of racial harassment, and that Kellogg was estopped from terminating him during the investigation due to Harper's promise to that effect.

The promissory estoppel claim was first tried separately to a jury. The jury found in Floyd's favor and awarded him $10,000 in damages. The claims under the Minnesota Human Rights Act and Title VII were then tried to the district court. The district court dismissed both claims with prejudice. *Floyd v. Kellogg Sales Co.*, No. 3–85 CIV 146, slip op. at 23 (D.Minn. Jan. 8, 1987). Additionally, the district court granted Kel-

logg's motion for JNOV on Floyd's promissory estoppel claim. *Id.* at 6.

## II.

■ The district court submitted the promissory estoppel claim to the jury in the form of a special verdict. The jury answered the five special interrogatories [1] affirmatively, and awarded Floyd $10,000 in back pay. The district court, in granting Kellogg's motion for JNOV, concluded that the evidence did not support the jury's answer to special interrogatory No. 4, that Townsend terminated Floyd because Floyd requested an investigation. *Id.* at 6. The district court found that Townsend did not know about Floyd's request for an investigation at the time that he terminated Floyd, and that Townsend did not terminate Floyd because of the investigation. *Id.* at 5–6. Floyd asserts on appeal that the district court improperly substituted its judgment for that of the jury in granting the JNOV.

The standard for granting a JNOV is well settled. The evidence, together with all reasonable inferences to be drawn therefrom, must be considered in the light most favorable to the plaintiff, as the party prevailing with the jury. *Cleverly v. Western Electric Co.*, 594 F.2d 638, 641 (8th Cir.1979) (*Cleverly*). The court may not weigh the evidence or assess the credibility of witnesses. *Merrill Lynch, Pierce, Fenner & Smith v. First National Bank*, 774 F.2d 909 (8th Cir.1985). The motion must be denied if, reviewing the evidence in this light, reasonable persons could differ as to the conclusions to be drawn from it. *Cleverly*, 594 F.2d at 641. In other words, a motion for JNOV may be granted only when all the evidence points one way and is susceptible of no reasonable inferences sustaining the jury's verdict. The critical

1. The special interrogatories were as follows:
    (1) Did Mr. Harper promise Mr. Floyd that if he requested an investigation of his claim of race discrimination he would not be terminated during this investigation?
    (2) Did Mr. Harper expect or should he have reasonably expected Mr. Floyd to request the investigation in reliance on his promise?

(3) Did Mr. Floyd reasonably rely on Mr. Harper's promise when making the request for an investigation?
(4) Did the employee of Kellogg Sales Company who made the decision to terminate Mr. Floyd do so because he requested an investigation?
(5) Did the investigation conducted by Mr. Harper fail to conform to the investigation he promised Mr. Floyd?

question, therefore, is whether there was any evidence from which the jury could have reasonably determined that Townsend knew about Floyd's request for an investigation prior to the termination, and that Townsend terminated Floyd because of the investigation.

We hold that there was evidence to support the jury's verdict. Zorbo testified that on August 17, 1983, just two days before Floyd was terminated, he told Townsend that Floyd could not be fired for an evaluation rating of "below average," and that Townsend should wait sixty to ninety days before conducting another evaluation. Zorbo also testified that he contacted Townsend about the investigation and forwarded interrogatories to him after their meeting on the 17th, but before Floyd was dismissed on the 19th. Floyd testified that when he told Townsend that Harper had promised that he would not be fired, Townsend responded that he had already consulted Harper about firing him. These three statements, taken together with all reasonable inferences that can be drawn from them, are ample evidence for the jury to have concluded that Townsend knew about Harper's investigation and fired Floyd because of it. It was within the province of the jury to assess the credibility of the witnesses, resolve conflicts in the evidence, and weigh the evidence. The jury has done so, and the district court may not substitute its judgment for that of the jury where the verdict is supported by the evidence. Accordingly, the JNOV is reversed, and the case is remanded to the district court with directions to reinstate the jury's verdict and enter judgment in favor of Floyd in the amount of $10,000.

### III.

■ Floyd's second point on appeal is that the district court, in passing on the employment discrimination claims, was bound by this court's decision in *McKee v. Bi–State Development Agency*, 801 F.2d 1014 (8th Cir.1986) (*Bi–State*),[2] to accept the jury's finding that Floyd was fired because he requested an investigation. Kellogg responds that Floyd has waived this point because both parties had agreed that the district court would not be bound by the jury's factual determinations on the promissory estoppel claim. We agree that Floyd waived any right he may have had to bind the district court with the jury's verdict. By agreeing with the district court that it was not bound by the jury's factual findings, Floyd steered the district court into the very error of which he now complains.[3]

■ Whether a party may waive the right to require the district court to accept a jury's finding of a fact common to both a jury-tried claim and a court-tried claim appears to be a question of first impression in this Circuit. However, it is well established that a litigant can waive other rights, which are as important to the resolution of civil claims as the right involved in

---

2. In *McKee v. Bi–State Dev. Agency*, 801 F.2d 1014, 1018–19 (8th Cir.1986), this court held that the burden of proof under the Equal Pay Act was identical to that in a sex discrimination action under Title VII, and that the district court in deciding a claim under Title VII could not make findings inconsistent with the jury verdict on an equal pay claim in the same trial.

3. The following colloquy occurred in chambers while the attorneys were discussing the proposed special interrogatory No. 4 with the trial judge:

THE COURT: I caution you that that question also could arguably bear on the case that I am trying, and the answer to that question, and I am telling you that I am not bound by the answer that the jury gives and I am not submitting it as an advisory verdict or I am not telling you this is going to resolve my case.

I am submitting this as part of the case of promissory estoppel.

[Kellogg's counsel]: I understand, Your Honor.

[Floyd's counsel]: I understand that, clearly, Your Honor.

THE COURT: Somebody could come back and say, Ah-ha, look at here—

[Kellogg's counsel]: The jury has no res judicata effect on the court's determination.

[Floyd's counsel]: Your Honor, I am aware that you discussed the discretion of the court to seek an advisory opinion and you have indicated that you would rule on that later and I have not said that you are going to do that, so I am not going to come back and make the argument that that is what that means.

this case. For example, the Eleventh Circuit has held that a party may waive the right to a directed verdict or JNOV by agreeing with the court to submit the case to the jury. *Murphy v. City of Flagler Beach,* 761 F.2d 622, 630–31 (11th Cir. 1985). Also, a litigant may by conduct waive the right to a jury trial, *West v. Devitt,* 311 F.2d 787, 788 (8th Cir.1963), or objections to personal jurisdiction, *National Equipment Rental, Ltd. v. Szukhent,* 375 U.S. 311, 316, 84 S.Ct. 411, 414, 11 L.Ed.2d 354 (1964). The rationale which justifies a waiver in the above cases is equally applicable to the present case. We thus hold that a litigant may waive his right to require the district court to accept a jury's finding of a fact common to both a court-tried and a jury-tried claim. In the present case, Floyd made such a waiver. Floyd indicated on the record that he understood that the district court did not consider itself bound by the jury's findings. Moreover, Floyd did not object to the district court's statement. Floyd thereby waived any right to have the district court bound by the jury's findings.[4]

### IV.

Accordingly, the judgment of the district court is affirmed in part and reversed in part, and remanded to the district court with directions. The judgment in favor of Kellogg on the Title VII and Minnesota Human Rights Act claims is affirmed. The judgment on the promissory estoppel claim is reversed, and the case is remanded to the district court with directions to reinstate the jury verdict on the promissory estoppel claim and enter judgment in favor of Floyd in the amount of $10,000.

---

**4.** Our conclusion that on these facts Floyd waived any argument that the district court should be bound by the jury's verdict should not, of course, be taken as an endorsement of the district court's statement that it would not be bound by the jury's verdict. In view of our disposition of Floyd's claim, we have no occasion here to decide whether the dismissal of Floyd's Title VII claims was inconsistent with the jury's verdict on the estoppel claim within the meaning of *Bi-State.* We also express no opinion on whether Interrogatory No. 4 states an element necessary to a claim of promissory estoppel under Minnesota law.