**Sheila J. KORTE, Plaintiff–Appellant,**

v.

**Ronald DIEMER, et al., Defendants–Appellees.**

No. 88–3114.

United States Court of Appeals, Sixth Circuit.

Argued Dec. 12, 1988.

Decided Aug. 8, 1990.

Sharon Griffin (argued), Toledo, Ohio, for plaintiff-appellant.

Thomas A. Dixon, David F. Cooper (argued), Toledo, Ohio, for defendants-appellees.

Before MERRITT, Chief Judge, MARTIN and JONES, Circuit Judges.

NATHANIEL R. JONES, Circuit Judge.

Plaintiff-appellant, Sheila J. Korte, appeals the district court's judgment for the defendants in this action filed under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq.* (1982). For the following reasons, we reverse and remand to the district court.

## I.

Sheila J. Korte was employed as a Deputy Sheriff in the Putnam County Ohio Sheriff's Office (PCSO) from September 1977 through April 1985. She was hired by Sheriff Robert Beutler, who served as Putnam County Sheriff until he was defeated by defendant-appellee, Ronald Diemer, in the November 1984 election. The record indicates that Beutler was a close personal friend of Korte.

Sergeant Korte worked as a plain clothes officer in the Putnam County Detective Bureau, where she was classified as a "juvenile officer" because she was assigned most of the cases involving neglect, abuse, dependency, and custody of children as well as cases involving juvenile offenders. Korte also was assigned most of the cases involving domestic relations and violence. Because of her extensive involvement with juvenile and domestic relations matters, Korte regularly gave talks in the community. During Korte's tenure with the PCSO, there were three other detectives in the Detective Bureau. All three men received higher salaries than Korte.

In 1983, Sheriff Beutler contacted the management consulting firm of Clemens, Nelson & Associates (CNA) and requested their assistance in developing position descriptions for the Detective Bureau so that the detectives would be properly classified under the Ohio civil service system. Beutler approved of the position descriptions prepared by CNA, and passed them along to the Ohio Department of Administrative Services (ODAS). All of the detective positions ultimately were classified as "Investigator II" positions. After defeating Beutler in the election, Diemer assumed office in January of 1985. Shortly thereafter, Diemer submitted a plan to ODAS for reorganization of the PCSO. Diemer's proposed plan called for the elimination of the Detective Bureau and all of the detectives' positions.

Korte worked in plain clothes. Throughout her employment with the PCSO, the cost of the clothing which she wore to work was routinely reimbursed to her upon request. In late January of 1985, after Diemer assumed office, Korte submitted a reimbursement request to the auditor's office. The auditor's office sent Korte a letter requesting itemization of the costs incurred. Upon learning of the matter, Diemer notified Korte that he would have to inspect her clothes before approving her

request for reimbursement. Korte neither gave the clothes to Diemer for inspection nor resubmitted the request for reimbursement.

On January 23, 1985, Diemer informed the Bureau detectives that they no longer would be permitted to keep their county cars overnight, but would have to park them in the jail parking lot. Korte's car subsequently developed mechanical problems and she was told not to drive it at all. Therefore, from late January 1985 until April 1985, Korte had to request the use of the other detectives' cars to perform her job. According to Korte, her car was regularly used by uniformed officers.

On February 22, 1985, Korte sent a letter to Diemer which stated her belief that she was being discriminated against because of her gender. On March 20, 1985, she filed complaints with the Ohio Civil Rights Commission (OCRC) and Equal Employment Opportunity Commission (EEOC), in which she charged that Diemer and the PCSO violated Title VII of the Civil Rights Act and the Equal Pay Act, 29 U.S.C. § 206(d) (1988),[1] by discriminating against her on the basis of gender.

On March 27, 1985, ODAS notified Diemer that his proposed plan of reorganization had been approved. On the same date, Diemer posted a notice that two captain positions were available in the Road Patrol. Korte applied for one of the positions, as did a number of other individuals. Diemer eventually filled the positions with two male deputies, both of whom possessed less educational training and overall experience than Korte. However, both of the men who were selected had more Road Patrol experience than Korte, and Diemer previously had worked with both men.

On April 5, 1985, Diemer formally notified the Bureau detectives that the Bureau was being abolished. On April 21, 1985, Diemer requested that all detectives return their building and office keys to him.

While all of the detectives complied with Diemer's request, some detectives eventually had their keys returned to them. Korte never had her keys returned and had to rely on others for entry to the building after April 21, 1985.

In February of 1986, Korte secured employment as a special deputy with the Allen County (Ohio) Department of Human Services. After speaking with Diemer, Allen County Sheriff Harrod indicated some disinclination to grant Korte special deputy status, but he eventually did grant her this status. However, Sheriff Harrod consistently refused to allow Korte to carry a gun in the performance of her duties.

Korte filed a second EEOC complaint in April of 1985 in which she charged that Diemer and the PCSO had discriminated against her on the basis of her age and retaliated against her for filing the first EEOC complaint. On July 30, 1986, the EEOC notified Korte and the PCSO that reasonable cause existed to believe that Korte's charges of unequal pay were true, and that it would undertake conciliation efforts with respect to both the Title VII and Equal Pay Act claims. Failing in its conciliation efforts, the EEOC subsequently notified Korte of her right to sue.

On October 3, 1986, Korte filed her complaint in the United States District Court for the Northern District of Ohio, Senior Judge Nicholas Walinski presiding. She named as defendants Diemer, the Putnam County Sheriff's Office, the Putnam County Board of Commissioners, and three individual Putnam County Commissioners. Korte's complaint charged the defendants with violating Title VII, the Equal Pay Act and the Age Discrimination in Employment Act, 29 U.S.C. § 623(a), *et seq.* (1988) (ADEA), by (1) paying her approximately $5,000.00 per year less than similarly situated male employees during the course of her employment; (2) denying her promotion

---

1. The Equal Pay Act requires that men and women receive equal pay when they are performing "equal" work on jobs whose performance "requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such [un-equal] payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quality or quantity of production; or (iv) a differential based on any other factor than sex...." 29 U.S.C. § 206(d)(1).

to a captain position for which she was more qualified than the younger males who were selected; (3) denying her a clothing allowance while affording similarly situated male employees the same; and (4) retaliating against her for filing the first EEOC charge by communicating negative recommendations to the Allen County Sheriff. Korte sought declaratory relief as well as an injunction ordering the defendants to assign her to the position she would have occupied but for their alleged discrimination. In addition, Korte sought (1) $10,-000.00 in Title VII back pay for two years of a discriminatory salary; (2) back pay and fringe benefits from the date she was refused promotion to a captain's position; (3) $40,000.00 in Equal Pay Act back pay plus liquidated damages in the amount of $40,000.00; (4) reimbursement in the amount of $30,000.00 for lost pension benefits; and (5) reimbursement of the attorney's fees and costs incurred with respect to the lawsuit.

Korte voluntarily dismissed her ADEA claim prior to trial. In October of 1987, she tried her Equal Pay Act claim to a jury while trying her Title VII claim to the court. On October 23, 1987, the jury returned a verdict in Korte's favor on the Equal Pay Act claim and awarded her damages in the amount of $2,624.00. However, on January 7, 1988, Judge Walinski filed his opinion denying Korte's Title VII claims. Addressing Korte's claim that she was discriminatorily compensated under Title VII, the district court first found that it was not bound by the jury's verdict on the Equal Pay Act claim. The court reasoned that the element of intent required under Title VII sufficiently distinguished Korte's Title VII claim from her Equal Pay Act claim, such that the jury verdict on the latter claim was not binding with regard to the former. The district court further found that Korte had not shouldered her burden of proof on the element of intent, and therefore was not entitled to relief under Title VII with respect to her claim of discriminatory pay. Addressing Korte's re-

maining claims, the district court found (1) that Diemer's action concerning Korte's reimbursement request was unrelated to her sex; (2) that Diemer's failure to promote Korte to captain was not due to her sex, but was based solely on the fact that the successful applicants had more Road Patrol experience than Korte; and (3) that because Korte had established no causal connection between Diemer's conversations with Sheriff Harrod and her filing of the OCRC and EEOC charges, there was no factual basis for her claim of discriminatory retaliation.

## II.

Korte argues that the jury's verdict in her favor on her Equal Pay Act claim bound the trial judge to find in her favor on her claim of discriminatory compensation under Title VII.[2] The district court found that it was not so bound because Korte was required to prove discriminatory intent under Title VII, but was not required to do so under the Equal Pay Act.

This court has consistently held that " '[w]hen a party has a right to a jury trial on an issue involved in a legal claim, the judge is ... bound by the jury's determination of that issue as it affects his disposition of an accompanying equitable claim.' " *Kitchen v. Chippewa Valley Schools*, 825 F.2d 1004, 1014 (6th Cir.1987) (quoting *Lincoln v. Board of Regents*, 697 F.2d 928, 934 (11th Cir.), *cert. denied*, 464 U.S. 826, 104 S.Ct. 97, 78 L.Ed.2d 102 (1983)). Since Korte's Equal Pay Act and Title VII claims arose out of the same set of underlying facts, the determinative question is whether the standards of liability under the two statutes are sufficiently similar such that the jury's verdict in favor of Korte on her Equal Pay Act claim necessitates that the trial judge find for Korte on her Title VII unequal pay claim. *See id.*

In *Odomes v. Nucare, Inc.*, 653 F.2d 246 (6th Cir.1981), this court stated in dicta that "[t]he analysis of a claim of unequal pay

---

**2.** Title VII, 42 U.S.C. § 2000e–2(a)(1), states in pertinent part: "It shall be unlawful for an employer.... to discriminate against any indi-

vidual with respect to his compensation ... because of such individual's race [or] ... sex...."

for equal work is essentially the same under both the Equal Pay Act and Title VII." *Id.* at 250. The court then proceeded to explain the procedures involved in establishing an Equal Pay Act claim, stating that the plaintiff must initially prove that the employer "pays different wages to employees of opposite sexes 'for work on jobs the performance of which require equal skill, effort and responsibility, and which are performed under similar working conditions.'" *Id.* at 250 (quoting *Corning Glass Works v. Brennan*, 417 U.S. 188, 195, 94 S.Ct. 2223, 2228, 41 L.Ed.2d 1 (1974)). Once the plaintiff has carried this burden, the court explained, " 'the burden shifts to the employer to show that the differential is justified under one of the Act's four exemptions.'" *Id.* at 251.

Similarly, this court recently held in an unpublished opinion, *Hanna v. County of Wood*, 895 F.2d 1413 (6th Cir.1990) (per curiam), that in deciding the legal issues on the Title VII claim, the district court was bound by the jury's findings on the overlapping state law equal pay claim. The *Hanna* court stated that the jury's verdict estopped the district court from finding that Hanna was not a victim of sexual discrimination in violation of Title VII. *See also In re Lewis*, 845 F.2d 624 (6th Cir. 1988) (in deciding whether employee was entitled to relief in the Title VII claim, district court bound by jury's findings on state law race discrimination claim).

While this circuit has not published a decision on the binding nature of a jury verdict under the federal Equal Pay Act, other circuits have ruled on this question. For example, in *McKee v. Bi–State Development Agency*, 801 F.2d 1014 (8th Cir. 1986), the Eighth Circuit addressed a situation where a district judge found against the plaintiff on her Title VII claim despite the fact that the jury found in favor of the plaintiff on her Equal Pay Act claim. The *McKee* court stated that "[w]here a claim is for unequal pay for equal work based upon sex, the standards of the Equal Pay Act apply whether the suit alleges a violation of the Equal Pay Act or Title VII." *Id.* at 1019. Therefore, the *McKee* court held that the district court erred in applying general Title VII standards to the plain-

tiff's Title VII claim for unequal pay, and ordered the district court to enter judgment for the plaintiff on her Title VII claim in accordance with the jury verdict on the Equal Pay Act claim. *Id. See also Floyd v. Kellogg Sales Co.*, 841 F.2d 226, 229 n. 2 (8th Cir.), *cert. denied*, 488 U.S. 970, 109 S.Ct. 501, 102 L.Ed.2d 537 (1988).

Both the Fifth and Seventh Circuits, however, have decided that the Equal Pay Act and Title VII, although similar, remain distinct as to the proof required and the allocation of the parties' burden of proof. In *Fallon v. Illinois*, 882 F.2d 1206 (7th Cir.1989), the court held that a finding of Equal Pay Act liability, without more, will not automatically lead to liability under Title VII. *Id.* at 1218. In *Peters v. City of Shreveport*, 818 F.2d 1148 (5th Cir.1987), the court reasoned that a finding that plaintiffs demonstrated they received unequal pay for equal work had two distinct effects:

As to the Equal Pay Act claims, the burden of proof shifted to the city to establish the application of one of the Act's four exceptions. As to the Title VII claims, the burden of production shifted to the City to articulate a nondiscriminatory reason for the wage differential. The burden of persuading the court that the differential was due to the City's intentional sex discrimination remained with the *plaintiffs* as to the Title VII claims.

*Id.* at 1154 (emphasis added). The court then held that because sex was not a *significant* factor in the wage differential, the plaintiffs were entitled to relief under the Equal Pay Act, but had failed to carry their ultimate burden under Title VII of proving discriminatory intent. *Id.* (citation omitted).

The district court in the instant case, explicitly rejecting *McKee*, relied upon *Spray v. Kellos–Sims Crane Rental, Inc.*, 507 F.Supp. 745 (S.D.Ga.1981) in denying Korte relief under Title VII. In *Spray*, the court held against the plaintiff on her Title VII claim of discriminatory discharge, while finding in her favor on her Equal Pay Act claim. The *Spray* court explained the different results by noting that the burden-shifting formulations under the two stat-

utes were different. Thus, while under Title VII the burden of persuasion remained with the plaintiff after the defendant proffered a nondiscriminatory rationale for her termination, under the Equal Pay Act defendant was required to prove that discriminatory intent was lacking once a prima facie case was proven. *Id.* at 751–52. *See also EEOC v. Sears, Roebuck & Co.,* 628 F.Supp. 1264 (N.D.Ill.1986), *aff'd* 839 F.2d 302 (7th Cir.1988) (plaintiff bears burden of proving intentional discrimination under Title VII).

We find the distinction drawn by the district court between Equal Pay Act liability and Title VII liability overly technical. A finding of "sex discrimination in compensation" under one Act is tantamount to a finding of "pay discrimination on the basis of sex" under the other. Conduct that a jury finds to be "based on" sex, and not motivated by nondiscriminatory reasons, cannot later be found by a district court to lack an intent to discriminate on the basis of sex. We therefore hold that the jury's verdict for Korte under the Equal Pay Act is binding on the district court as to her Title VII claim.

### III.

Accordingly, we REVERSE and REMAND to the district court for proceedings consistent with this opinion.