IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 92-2679
_____


EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

Plaintiff-Appellee,

RHONDA L. GOERLITZ,

Intervenor-Plaintiff
Appellee-Cross Appellant,

versus

CLEAR LAKE DODGE, ET AL.,

Defendants,

GULF COAST DODGE, INC., d/b/a
CLEAR LAKE DODGE,

Defendant-Appellant,
Cross-Appellee.

*****************************************************************
_____

No. 92-2859
_____


EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

Plaintiff,

WALTER R. GRIMES,

Appellant,

versus

RHONDA L. GOERLITZ,

                                          Intervenor-Plaintiff
                                                     Appellee,

                              versus

CLEAR LAKE DODGE, ET AL.,

                                          Defendants.
_____
            Appeals from the United States District Court for the
                        Southern District of Texas
_____
                            (July 25, 1995)

                        OPINION ON RECONSIDERATION

Before JOHNSON, GARWOOD, and JOLLY, Circuit Judges.

PER CURIAM:

    This panel's original opinion in this case was issued June 24,
1994, and was reported at 24 F.3d 265.  Goerlitz filed a petition
for rehearing, and the EEOC filed a suggestion for rehearing en
banc.  In response to the petition for rehearing, we withdraw our
earlier opinion and substitute the following opinion.

    The Equal Employment Opportunity Commission, on behalf of
Rhonda Goerlitz, brought this sex discrimination action--in which
Goerlitz later intervened personally to raise state law issues--
against Gulf Coast Dodge, Inc., claiming that Gulf Coast fired
Goerlitz because of her pregnancy.  The jury returned a defendant's
verdict in favor of Gulf Coast on all state law issues.  The jury
also decided in favor of Goerlitz on the Title VII claims, but its
ruling in this respect was advisory only.  The district judge

disregarded the advisory verdict, however, and ruled in favor of Goerlitz on her Title VII claims. We affirm both the jury and the judge.

We affirm the district court's decision to award attorneys' fees, but hold that the district court abused its discretion in determining the amount of fees to be awarded. Accordingly, we remand the case to the district court for reconsideration of the fees in the light of this opinion. Finally, we affirm the district court's imposition of sanctions on Gulf Coast's attorney in connection with post-trial matters.[1]

## I

Gulf Coast hired Rhonda Goerlitz to be a customer service representative ("CSR"). Goerlitz was hired in probationary status for the first ninety days at $1400 a month with a raise after that to $1500 a month if given permanent status. When she began work on July 15, 1990, Goerlitz was about one month into a pregnancy.

She worked with automobile purchasers to assure that the vehicle was clean when delivered, to demonstrate how to operate various features on the automobile like the cruise control and the radio, and to show the location of the spare tire. In the case of a van purchase, her job included demonstrating how to fold down the sofa bed.

---

[1]This opinion is identical to our earlier opinion except with respect to the introduction and sections III.B and IV. Further, a dissent has been appended, which dissents, however, only from part III.B.

After about one and a half months on the job, and several weeks after she revealed her pregnancy, Goerlitz was taken out of her job as a CSR and was assigned temporarily as a dispatcher to fill in for vacationing employees. Goerlitz's supervisor, Don McMillan ("McMillan"), made this change in Goerlitz's assignment after he had observed her demonstrating vehicles. McMillan stated that Goerlitz was "too big" to enter vehicles properly. When McMillan transferred Goerlitz from the CSR position, he told her that when she was no longer needed as a dispatcher, he would look into finding her a clerical position.

After a few weeks as a dispatcher, on September 10, 1990, when McMillan was on vacation, Goerlitz slipped and fell on the service driveway. She was taken by ambulance to an emergency room, where it was determined that she had sprained her ankle. She returned to work the same day, but Harry McGinty, who was filling in for McMillan, instructed Goerlitz to stay home for the rest of the week and to contact McMillan upon his return the next Monday.

On September 17, Goerlitz called McMillan to ascertain her employment status. McMillan told her that he did not need anyone to work in dispatch that day. In response to Goerlitz's inquiry about her status, McMillan replied that it had not changed since their conversation in August when he had transferred her from her position as a CSR. According to McMillan, he told Goerlitz that he thought they could put together a job for her doing filing and possibly keypunch. Goerlitz asked several times during the

conversation if she had been fired; McMillan answered that she had not.

Goerlitz went to see McMillan the next day, on September 18, and they once again discussed the file clerk job. On the day before the meeting occurred, however, McMillan had prepared a Personnel Action Report and had dated it effective September 12, 1990. On the form, the box labeled "TERMINATION" was checked and the following comment was written: "unable to perform her duties properly due to pregnancy." McMillan testified at trial that this report was not a termination notice, but merely a transfer slip indicating to the company's payroll clerk which department was responsible for the employee's pay.

## II

The EEOC originally brought this action against Gulf Coast, alleging that Goerlitz was terminated from her position at Gulf Coast because of her sex (pregnancy). The suit was commenced on April 1, 1991, pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq.

Some six months later, on October 29, 1991, Goerlitz intervened. She alleged, in addition to the Title VII action, causes of action under the Texas Human Rights Act, TEX. REV. CIV. STAT. ANN. art. 5221k (Vernon 1991); the Texas Workers Compensation Act, TEX. REV. CIV. STAT. ANN. art. 8307c (Vernon Supp. 1991); intentional infliction of emotional distress; and negligent infliction of emotional distress. Goerlitz demanded a jury.

The district court granted Goerlitz a binding jury for her state law claims, but the court determined that it would submit interrogatories under Title VII to the jury only as an advisory jury, under the Civil Rights Acts of 1964. The trial began on January 6, 1992. On January 15, the jury returned its answers to the interrogatories in favor of the defendants on all claims.

On February 18, 1992, the district court made findings of facts and conclusions of law on Goerlitz's claims under Title VII.[2] It concluded that the "EEOC and Goerlitz established through direct testimony and documentary evidence that Goerlitz's pregnancy was a substantial factor in Gulf Coast's decision to reassign her." The court held that "Gulf Coast had failed to prove by a preponderance of the evidence that the decision to reassign Goerlitz and then discharge her would have been made absent her pregnancy," or that "Goerlitz's pregnancy interfered with her ability to perform either her job as [CSR] or her job in Dispatch."

Accordingly, the district court found that Goerlitz was entitled to back pay, prejudgment interest thereon, and attorneys' fees. The court, however, accepted the jury's finding against Goerlitz on her state law claims, and denied Goerlitz's motions for judgment notwithstanding the verdict and for a new trial on her state law claims.

---

[2]The court noted that "the parties agreed that the claim for violations of Title VII presents questions for the Court rather than for the jury." The district court characterized the jury's verdict as "advisory fact findings on the non-jury fact questions."

On August 10, 1992, Goerlitz had Gulf Coast served with a writ of execution. On the same day, Gulf Coast filed a motion to approve the supersedeas bond. Goerlitz opposed the motion to approve the supersedeas bond and sought sanctions for submitting a defective bond. On September 24, the trial court held a hearing on both motions, and the court ordered sanctions against Gulf Coast's attorney, Grimes, on October 19.

Gulf Coast filed its notice of appeal on August 25, and on October 30, Grimes filed a notice of appeal from the court's order of sanctions.

## III

On appeal, Gulf Coast argues that the district court erred by entering a judgment in favor of Goerlitz on her Title VII claim when that judgment was contrary to the jury verdict in favor of the defendant on identical state law claims. Goerlitz, on the other hand, asserts that, according to the agreement of the parties, the jury verdict was not binding on the district court and that any argument to the contrary has been waived. On cross-appeal, Goerlitz argues further that the jury verdict was unsupported by the evidence, and that the district court should have granted her motions for judgment as a matter of law, or alternatively, for a new trial.

In addition to these "merits" issues, Gulf Coast also appeals two ancillary rulings. Gulf Coast argues that the trial court abused its discretion, first, in awarding attorneys' fees to

Goerlitz's attorney, and, second, by imposing sanctions on Gulf Coast's attorney, Walter Grimes.  We will address each of these issues in turn.

A

(1)

Gulf Coast's first claim is that the district court erred when it found in favor of Goerlitz on her Title VII claim.  It argues that the jury verdict on the state law claims, which decided all relevant issues against Goerlitz, was binding on the district court.  In support, Gulf Coast cites the Eleventh Circuit's decision in Lincoln v. Board of Regents, 697 F.2d 928 (11th Cir.), cert. denied, 464 U.S. 826 (1983), which stated:

> An action for reinstatement and backpay under Title VII is by nature equitable and entails no rights under the seventh amendment.  An action for damages under § 1981, however, is by nature legal and must be tried by a jury on demand.  When legal and equitable actions are tried together, the right to a jury in the legal action encompasses the issues common to both.  When a party has the right to a jury trial on an issue involved in a legal claim, the judge is of course bound by the jury's determination of that issue as it affects his disposition of an accompanying equitable claim.

Id. at 934 (Wisdom, J.) (emphasis added) (citations omitted).  Furthermore, Gulf Coast argues that the Fifth Circuit has adopted this holding in Ward v. Texas Employment Comm'r, 823 F.2d 907 (5th Cir. 1987).

Although it is not entirely clear whether the Lincoln holding should apply in this circuit beyond the facts of Ward, we do not

reach that question today.  Instead, we hold that Gulf Coast waived its right to a binding jury verdict.

The conduct in this case occurred before, and the trial took place after, the effective date of the Civil Rights Act of 1991, which enacted the right to a jury trial on Title VII claims. Throughout the district court proceedings, Gulf Coast argued that the Civil Rights Act of 1991, and its right to a jury trial, should not be retroactively applied.[3]  The district court agreed with Gulf Coast, and thus ordered that the selected jury would be only advisory as to the equitable Title VII claim.  Gulf Coast fully agreed with this decision and repeatedly and consistently asserted the view that the district court was the fact finder in the Title VII case.  Gulf Coast never argued before the district court that Ward and Lincoln applied to make the jury verdict binding.  In fact, even in its post trial motion for judgment under Rule 52(a) Gulf Coast characterized the verdict as "only advisory to the Court, on the . . . Title VII claim."

Because Gulf Coast argued for, and fully supported the court's ruling that the jury would be only advisory on the Title VII case, Gulf Coast waived any right that it might otherwise have had.  See Floyd v. Kellogg Sales Co., 841 F.2d 226, 229-30 (8th Cir.) cert. denied, 488 U.S. 970 (1988); see also Rideau v. Parkem Industrial

---

[3]This position is consistent with the Supreme Court's recent decision in Landgraf v. USI Film Prods., ___ U.S. ___, 114 S.Ct. 1483, which affirmed our decision in Landgraf, 968 F.2d. 427 (5th Cir. 1992), cert. granted, in part, 113 S.Ct. 1250 (1993).

Services, Inc., 917 F.2d 892, 896 (5th Cir. 1990) (stating that a party can waive a Seventh Amendment right to a jury trial).  See Hamman v. Southwestern Gas Pipeline, Inc., 821 F.2d 299, 308 (5th Cir. 1987).[4]  In sum, it is clear that under these circumstances the district court was not bound to apply the findings of the jury in determining the Title VII claims.  See Verdin v. C & B Boat Co., 860 F.2d 150, 154 (5th Cir. 1988).

(2)

Our task thus becomes to review the merits of the district court's Title VII findings.  A district court's judgment cannot stand where its findings are clearly erroneous.  FED. R. CIV. P. 52.  "[A] finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed."  Cupit v. McClanahan Contractors, 1 F.3d 346, 348 (5th Cir. 1993) (citing United States v. Gypsum, 333 U.S. 364 (1948)).  We are not permitted to re-weigh the evidence on appeal simply because we disagree with the choices made by the district court.  Anderson v. Bessemer City, 470 U.S. 564, 573-74, 105 S.Ct. 1504, 1511 (1985).  But we will overturn the district court where there is only one permissible view of the weight of the evidence.  Amadeo

[4]Furthermore, this circuit has a long-standing rule that it will not consider for the first time on appeal an argument not made to the district court.  Earvin v. Lynaugh, 860 F.2d 623, 627-28 (5th Cir. 1988), cert. denied, 489 U.S. 1091, 109 S.Ct. 1558 (1989).

-10-

v. Zant, 486 U.S. 214, 225-26, 108 S.Ct. 1771, 1778 (1988); Chaney v. City of Galveston, 368 F.2d 774, 776 (5th Cir. 1978). Furthermore, this same standard applies even when an advisory jury has suggested contrary findings. Fed. R. Civ. P. 52(a); Verdin v. C & B Boat Co., 860 F.2d 150, 154 (5th Cir 1988).

In the present case, the evidence adequately supports a finding that Gulf Coast transferred Goerlitz because of her pregnancy and, ultimately, discharged her for that same, impermissible reason. The evidence, for example, reveals the undisputed fact that McMillan completed and signed a Personnel Action Report regarding Goerlitz on which he checked the option labelled "TERMINATION" and noted "UNABLE TO PERFORM DUTIES PROPERLY DUE TO PREGNANCY." McMillan also authorized that Goerlitz be given severance pay when he filled out the Personnel Action Report. Furthermore, several of the plaintiff's exhibits demonstrate that when Gulf Coast employees are transferred, "TERMINATION" is not checked on the Personnel Actions Report, and the details of the transfer are noted.

This evidence fully supports the finding that Goerlitz was fired from her job; it adequately refutes Gulf Coast's contention that she was transferred and that she quit. In short, the evidence will support the finding that the reason for Goerlitz's termination was her pregnancy. Although other evidence may support a contrary

finding,[5] we hold that the district court committed no error in entering judgment against Gulf Coast on the Title VII case.[6]

---

[5]Specifically, there was a great deal of testimony concerning the manner in which Goerlitz carried out her duties as a customer service representative.  First, there was testimony that Goerlitz was too big to properly enter and exit the vehicles that she worked in.  At the same time, however, the evidence showed that Goerlitz had gained only nine pounds from her pregnancy when she worked at Gulf Coast.  Further, there was evidence that Goerlitz wore clothing that was not appropriate for her job, and that on at least one occasion her clothing "rode up" on her to the point that a customer was embarrassed--thus, reflecting poorly on Gulf Coast.  Finally, with respect to Goerlitz's job performance, McMillan testified that he received several complaints about Goerlitz, that she had displeasing mood swings, that on at least one occasion, she took several hours for lunch without the permission of her supervisor, and on yet another occasion, Goerlitz was unavailable and nonresponsive to McMillan's page.  From this testimony, a jury could reasonably conclude that Goerlitz was terminated because of her job performance, and not because of her pregnancy.

In addition, the testimony presented would even support a reasonable jury in concluding that McMillan made every good faith effort possible to keep Goerlitz at the dealership even though she was not performing her job satisfactorily.  The testimony showed that McMillan transferred Goerlitz to dispatch, believing that she would perform better in that capacity because she had prior experience in dispatch.  Further, according to testimony, the transfer was made, in part, to satisfy Goerlitz's own scheduling request, and McMillan testified that Goerlitz seemed eager to try it.  After Goerlitz fell in the driveway of the dealership, however, and then was absent for a week, the testimony shows that she called McMillan, repeatedly asked if she had been fired, and ignored McMillan's assurances that she had not been fired.  A reasonable jury could have believed that Goerlitz's accosting attitude in this final interchange caused Goerlitz's termination-- in spite of McMillan's good faith efforts to continue her employment.

[6]Goerlitz also argues that the district court erred in denying her motions for a judgment notwithstanding the verdict and for a new trial on her state law claims.  A motion for JNOV should be granted where reasonable minds could reach only one conclusion on the evidence as presented.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-51, 106 S.Ct. 2505, 2511 (1986); Boeing Co. v. Shipman, 411 F.2d 365, 374 (5th Cir. 1969) (en banc).  In the present case, however, we find that the evidence presented was such

Furthermore, we hold that the court committed no error in calculating the amount of its damage award.[7]

## B

In addition to its damage award, the district judge ordered Gulf Coast to pay Goerlitz's attorneys' fees in the amount of one hundred thirty-two thousand, nine hundred twenty-six dollars and twenty-one cents ($132,926.25).  The Civil Rights Act of 1964 provides that a "prevailing party" in a suit brought under Title

---

that reasonable minds could disagree on its meaning.  See supra note 4.  Accordingly, we hold that the district court committed no error by entering a plaintiff's judgment on the Title VII case and, at the same time, letting stand the defendants' jury verdict on the state law claims.  Cf. Lytle v. Household Manufacturing, Inc., 494 U.S. 545, 110 S.Ct. 1331, 1338 (1990) (explaining that the judge's role in ruling on a motion for JNOV is quite different from his role as a factfinder).

A district court, nonetheless, can grant a new trial where the verdict returned is against the great weight of the evidence.  This decision, however, is committed to the discretion of the trial judge, and where the judge has denied a new trial motion, our review is very narrow.  Jones v. Wal-Mart Stores, Inc., 870 F.2d 982, 987 (5th Cir. 1989).  Given that the evidence presented would support a verdict in favor of either party, we find that the district court committed no reversible error in denying Goerlitz's new trial motion.  Finally, we note that our decision to uphold the district court's Title VII judgment makes moot Goerlitz's JNOV and new trial arguments to the extent that she sought to recover for her economic damages through her state law claims, because the court's Title VII judgment provides Goerlitz a full recovery of her economic damages.

[7]Gulf Coast contends that it is entitled to a reduction of its back pay liability because it made an "unconditional offer" to reinstate Goerlitz to her prior position in November of 1990.  We agree with the district court that this "offer" did not satisfy the requirements of Ford Motor Co. v. EEOC, 458 U.S. 219, 102 S.Ct. 3057, 3063 (1982).

-13-

VII is entitled to recover her attorneys' fees and costs. 42 U.S.C. § 2000e-5(k). The award of attorneys' fees, nevertheless, rests within the discretion of the district court.[8] We will not reverse an award of attorneys' fees unless the trial court abused its discretion or based its award on clearly erroneous findings of fact. Johnston v. Harris County Flood Control Dist., 869 F.2d 1565 (5th Cir. 1989), cert. denied, 493 U.S. 1019, 110 S.Ct. 718, 107 L.Ed.2d 738 (1990).

The action before us was originally brought by the EEOC. It asserted Goerlitz's rights only under Title VII of the Civil Rights Act of 1964. All other claims asserted in this case were not part of the original suit. On October 29, 1991, more than six months after the original suit was filed, Goerlitz, through her private attorney, intervened, and added state law claims. As to each and every claim added to this case by Goerlitz, the jury found in favor of Gulf Coast Dodge. In short, the EEOC brought each and every prevailing claim; Goerlitz brought each and every rejected claim.

We recognize, however, that after Goerlitz intervened in this case, her private lawyer represented her not only on her losing state law claims but also on claims under Title VII. Goerlitz obtained a favorable judgment on her Title VII claims; in this sense, she qualifies as a "prevailing plaintiff" under our

_____

[8]42 U.S.C. § 706(k).

-14-

"generous formulation" of the term.[9]  Attorney fees, however, are not necessarily automatic for prevailing parties, because "[i]n some circumstances, even a plaintiff who formally 'prevails' . . . should receive no attorney's fees at all."  Farrar v. Hobby, __ U.S. ___, 113 S.Ct. 566, 575, 121 L.Ed.2d 494 (1992).

As we have earlier noted, the plaintiff was not the prevailing party with respect to her state law claims.  The plaintiff, however, clearly was the prevailing party with respect to her Title VII claims.  As we have also noted, however, the plaintiff was competently represented by the EEOC who initiated and prosecuted all the Title VII claims with respect to which the plaintiff prevailed.  Notwithstanding the redundancy of Goerlitz's private attorney, as far as the Title VII claims are concerned, she nevertheless participated in the related discovery and in the presentation of the Title VII claims, and, obviously, made some contribution to the Title VII victory Goerlitz won before the district court.  Our consideration of the district court's award of $132,926.25 in attorneys' fees in comparison to that contribution, however, convinces us that although the district court did not

_____

[9]"A typical formulation is that 'plaintiffs may be considered "prevailing parties" for attorney's fees purposes if they succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit.'"  Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S.Ct. 1933, 1939, 76 L.Ed.2d 40 (1983)(quoting Nadeau v. Helgemoe, 581 F.2d 275, 278-79 (1st Cir. 1978)).

abuse its discretion in awarding some attorneys' fees, its award must on remand be trimmed back significantly.

When assessing the appropriateness of attorneys' fees, we must recognize the well-settled principle that attorneys' fees must be awarded only for those lawyer hours that are reasonably necessary to adequately prosecute the case. City of Riverside v. Rivera, 477 U.S. 561, 568, 106 S.Ct. 2686, 2691, 91 L.Ed.2d 466; Hensley, 461 U.S. at 434, 103 S.Ct. at 1939. Attorneys' fees must not be awarded for attorney hours that are "excessive, redundant, or otherwise unnecessary." Hensley, 461 U.S. at 434, 103 S.Ct. at 1939-40. Title VII, furthermore, does not allow for the award of any attorneys' fees requested, but only reasonable fees. Curtis v. Bill Hanna Ford, Inc., 822 F.2d 549, 551 (5th Cir. 1987). Another important consideration is that once civil rights litigation materially alters the legal relationship between the parties, "the degree of the plaintiff's overall success goes to the reasonableness of a fee award." Farrar, 113 S.Ct. at 574. There is no windfall of attorneys' fees when the district court properly considers the relationship between the extent of the success and the amount of the fee award. See id. at 575. Similarly, "the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended in the litigation." Rivera, 106 S.Ct. at 2691.

Here, we are faced with a somewhat unusual case. As discussed above, in April 1991 the EEOC instituted this suit on behalf of the

plaintiff. About two weeks later, Goerlitz's private attorneys instituted a suit in state court based solely on state law claims. After the state court abated the suit in response to the defendant's motion, Goerlitz moved to intervene in this suit in August 1991. The district court granted the motion to intervene in October, allowing the plaintiff to pursue her numerous state law claims, all arising from the same set of incidents. This necessitated a week-long jury trial in January 1992, which not only proved fruitless with respect to her state law claims, but extended the trial far in excess of the time it otherwise would have taken if the proceeding had been limited to the Title VII claims. Standing alone, the simplicity of the EEOC case did not justify the service of additional attorneys. The Title VII claims asserted in the EEOC's suit were at all times identical to Goerlitz's Title VII claims, and the EEOC's suit never embraced any other claims. Moreover, because there is no suggestion of possible conflict between the interests of the EEOC and those of the plaintiff, nor any suggestion that the EEOC was lax in pursuing the Title VII claims, there is little justification on any basis for additional attorneys. In short, when the contribution of Goerlitz's counsel is considered solely in the context of the Title VII claim, her services were largely unnecessary. The district court, when reviewing the amount of justifiable attorney fees, seems not to have taken this very significant factor into consideration. It is true, of course, that the plaintiff, who originally claimed 1075

attorney hours on the entire case, deducted about 187 hours on account of the failure of all her jury claims. This deduction left 868 hours of compensable time, which we view as quite unreasonable--almost one half a year when 2,000 billable hours a year is considered average--in this simple Title VII case involving a single discharge in a case that ultimately should have taken no more than three days to try. In this respect, we note that 390 hours are claimed in the month of January 1992, the time of the trial, which were in large part fruitless hours for Goerlitz's private counsel. On remand, therefore, it will be for the district court to determine the extent to which Goerlitz's private counsel was not redundant or unnecessary in the pretrial or trial of this relatively simple Title VII case.

Additionally, the court erroneously concluded that the plaintiffs should be granted an enhancement to the hourly rate. As justification for the enhancement, the district court stated that the case "required highly skilled counsel" and that Goerlitz needed these attorneys to conduct a "complex factual investigation, including a large number of documents and depositions to rebut Gulf Coast's defenses of inadequate performance and poor attitude." As further justification for the enhanced award, the court noted that Goerlitz had obtained "positive results on her Title VII claim, and that in achieving this result, she had encountered `the uncooperative behavior of defense counsel throughout pretrial matters and trial preparation.'" These factors do not impress us

as uncommon encounters of trial counsel, which would justify more than usual hourly compensation; the fact that the case was complex, involved a large number of documents, or recalcitrant counsel would be compensated by the additional hours that these factors would have necessitated.

We therefore remand the case to the district court for reconsideration of attorneys' fees. The district court must keep foremost in its mind that Goerlitz succeeded only on her Title VII claims with respect to which the EEOC was fully adequate to prosecute. The district court must also remember that Goerlitz lost on all of the claims brought by her private counsel, and that the fact that she happened to win before the district judge on her Title VII claims does not provide a windfall of compensation for claims prosecuted, but lost.

C

Finally, we turn to address Gulf Coast's argument that the district court erred by imposing sanctions on its attorney, Walter Grimes. The appropriate standard of review in assessing the district court's award of Rule 11 sanctions is the abuse of discretion standard. Thomas v. Capital Sec. Servs., Inc., 836 F.2d 866, 872 (5th Cir. 1988). The district court imposed these sanctions because Grimes repeatedly failed to comply with FED. R. CIV. P. 62(d) and the applicable case law in filing a supersedeas bond in the present action, and because Grimes made no "good faith argument for the extension, modification, or reversal of existing

law." FED. R. CIV. P. 11. It imposed sanctions in the amount of the "reasonable expenses incurred by Goerlitz in connection with the defective supersedeas bond."

It is clear that under Rule 11, an attorney has the obligation to conduct "a reasonable inquiry into the law such that the document [that he signs] embodies existing legal principles." Yet, it is equally clear that when Goerlitz attempted to enforce the judgment against Gulf Coast, Grimes' response was to file an incomplete, insufficient supersedeas bond.[10] Acting to protect the interest of her client, Goerlitz's attorney filed an opposition to the motion to approve the supersedeas bond, pointing out the defects in the bond, and requesting sanctions against Grimes. Grimes then filed an amended supersedeas bond that corrected several of the problems with his original bond, but which still failed to give an adequate assurance that the bond would be effective.[11]

---

[10]First, the defense attorney filed the supersedeas bond prior to appealing the judgment of the district court. FED. R. CIV. P. 62(d) specifically provides that a bond "may be given at or after the time of filing the notice of appeal." Further, the amount of the bond failed properly to cover costs as required under the law. See Metz v. United States, 130 F.R.D. 458, 459 (D. Kan. 1990); Avirgan v. Hull, 125 F.R.D. 185, 188 (S.D. Fla. 1989) (citing Poplar Grove Planting and Refining Co., Inc. v. Bache Halsey Stuart, Inc., 600 F.2d 1189, 1191 (5th Cir. 1979)).

[11]Specifically, Mr. Grimes signed the bond as "attorney-in-fact," but there was no evidence that Mr. Grimes had the power to commit Gulf Coast to pay the bond. At a hearing on the matter, the district judge ruled that the bond would be considered insufficient until the president of Gulf Coast signed the bond.

Given that Grimes signed a supersedeas bond that clearly failed to comport with the requirements called for by law, and given that Goerlitz's counsel acted reasonably in seeking to protect the interests of her client, we cannot say that the district court abused its discretion in imposing sanctions against Grimes in the amount ordered. Accordingly, the order for sanctions is affirmed.

IV

Having found that Gulf Coast waived any right that it might have had to a binding jury verdict for its equitable claims, and having found that the district court's findings in favor of Goerlitz on her Title VII claims were not clearly erroneous, we AFFIRM the Title VII judgment of the district court. Further, we AFFIRM the district court's rulings denying Goerlitz's JNOV and new trial motions. We also AFFIRM the imposition of sanctions against Gulf Coast's attorney, Walter Grimes. We REVERSE, however, the district court's award of attorneys' fees to Goerlitz because we find that the district court abused its discretion in determining the amount of fees to be awarded. We therefore REMAND to the district court for a recalculation of Goerlitz's attorneys' fees consistent with the observations of this opinion.

AFFIRMED in part, REVERSED in part, and REMANDED.

-21-

E. GRADY JOLLY, Circuit Judge, concurring in part and dissenting in part.

Because I would hold that no attorneys' fees are warranted in this case, I respectfully dissent from Part III.B of the opinion. I concur, however, in all other parts of the opinion.

Goerlitz's private attorneys intervened in this case only to prosecute her state law claims; that is, the claims that the EEOC was not statutorily authorized to pursue on behalf of Goerlitz. Each and every state law claim was rejected. There is nothing in the record to suggest that the EEOC attorneys were not perfectly capable of handling the Title VII claims. Moreover, these were the only ones on which she prevailed. In my view, private attorneys were wholly and completely redundant and unnecessary, and payment of any fees to them constitutes a windfall. I adhere to the position that I earlier expressed, when I wrote for the majority, that "--absent unusual exceptions not here present--that it is patently 'redundant' and 'unnecessary' for a private attorney to participate in the litigation of identical claims that are simultaneously being pursued by the government-paid attorneys of the EEOC." Clear Lake Dodge, 25 F.3d at 272.

For these reasons, I respectfully dissent.