**BELL ATLANTIC CASH BALANCE PLAN, et al., Plaintiffs,**

v.

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Defendant.**

**C.A. No. 97–330–A.**

United States District Court, E.D. Virginia, Alexandria Division.

Sept. 3, 1997.

James J. Kelley, Morgan, Lewis & Bockius, LLP, Washington, DC, Francis M. Milone, William J. Delaney, Morgan, Lewis & Bockius, LLP, Philadelphia, PA, Mary M. McKenzie, Bell Atlantic Network Services, Inc., Philadelphia, PA, for Plaintiffs.

Helen F. Fahey, U.S. Atty., Rachel C. Ballow, Asst. U.S. Atty., Alexandria, VA, Ellen J. Vargyas, Legal Counsel, Thomas J. Schlageter, Asst. Legal Counsel, Daniel T. Riordan, Senior Atty., Equal Employment Opportunity Com'n, Washington DC, for Defendant.

## MEMORANDUM OPINION

ELLIS, District Judge.

The threshold jurisdictional issue presented in this declaratory judgment action is whether plaintiffs have "jumped the gun" in petitioning for a declaration of non-discrimination before the defendant-agency has completed its investigation and assessment of certain discrimination charges. Put more succinctly, the question here is one of ripeness, namely, whether there exists an "actual case or controversy" fit for federal adjudication.

### I

Plaintiffs, Bell Atlantic Cash Balance Plan, Bell Atlantic Corporation, and five other Bell Atlantic corporate entities (collectively referred to as "Bell Atlantic"), filed this action against defendant, the U.S. Equal Employment Opportunity Commission ("EEOC"), on March 10, 1997. The events that culminated in this filing began when Mary Hale ("Hale") and Carol Page ("Page"), on behalf of themselves and other female employees of Bell Atlantic, filed separate charges of discrimination with the EEOC in 1994 and 1995. In their respective charges, Hale and Page allege that Bell Atlantic's method of calculating retirement benefits for female employees retiring after 1979 violates Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. According to Hale and Page, this method runs afoul of Title VII because it does not give women retiring after 1979 any retirement service credits for pregnancy-related absences that occurred prior to April 29, 1979, the effective date of the Pregnancy Discrimination Act ("PDA"), 42 U.S.C. § 2000e(k), as it relates to fringe benefit plans.[1] This matter merits elaboration.

Bell Atlantic provides retirement benefits to Hale, Page, and other eligible employees that are based, in part, on the employee's term of employment. For pension purposes, Bell Atlantic measures an eligible employee's length of service by use of a "net credited service" system. Pursuant to this system, an employee's term of employment begins on the date of matriculation, and it is adjusted for periods of separation, or absences, from work not subject to a then-valid credit. Thus, prior to the PDA's enactment in 1979, an employee received full credit for the time during which he or she was absent due to a temporary disability, but received only one month of credit for time spent on personal leave in connection with a pregnancy. After the PDA's enactment, Bell Atlantic changed its method of calculating service credit by treating personal leave due to pregnancy in the same manner as disability leave. Notwithstanding this change, female employees who took pregnancy leave prior to the PDA's effective date received only one month's credit for their pregnancy-related absences.

---

1. The PDA was enacted and became effective on October 31, 1978. The Act specifically provided, however, that it would not take effect with respect to fringe benefit plans until 180 days after its date of enactment. *See* Pregnancy Amendments Act, Pub.L. No. 95–555, § 2(a)-(b), 92 Stat. 2076 (1978).

Bell Atlantic's predecessor, Bell Telephone Company of Pennsylvania, hired Hale as an accounting clerk on June 27, 1956. Hale voluntarily resigned after only three years, but then rejoined Bell Atlantic in July 1968. On March 22, 1971, Bell Atlantic required Hale to take a pregnancy-related leave of absence. Following two brief extensions, she returned to work on December 27, 1971. Pursuant to its then-existing net-credited-service system, Bell Atlantic gave Hale only one month of service credit for that entire period of leave. On February 16, 1995, Hale retired and received pension benefits based on her net-credit-service date of October 5, 1965—a date whose calculation was influenced by Hale's uncredited pregnancy-related absence. On March 30, 1995, Hale filed her EEOC charge of discrimination.

The facts of Page's case are similar. On April 15, 1974, Bell Atlantic also required Page to take a pregnancy-related leave of absence. Page returned to work on October 21, 1974. Notwithstanding Page's seven-month leave, Bell Atlantic, pursuant to its then-legal policy, gave her only one month of retirement service credit. Although Page is still employed by Bell Atlantic, her pension benefits will be affected by her pregnancy-influenced service-credit assessment. Accordingly, on November 2, 1994, Page filed an EEOC charge of discrimination on the same basis as alleged by Hale.

In connection with Hale's charge, the EEOC's District Director in Philadelphia served an administrative subpoena on Bell Atlantic on August 28, 1996. Specifically, the subpoena requested that Bell Atlantic provide, by September 13, 1996, "documents or any other source of information which show all actively employed females in Pennsylvania, New Jersey, and Delaware who had a break in service due to pregnancy during the period January 1, 1971 to December 31, 1978." On September 5, 1996, Bell Atlantic petitioned the EEOC to revoke or modify the subpoena for four independent reasons. On December 9, 1996, the EEOC's Regional Attorney issued a determination denying Bell Atlantic's petition to revoke or modify the subpoena and required the production of the

requested documents within one year of that date. Thereafter, Bell Atlantic informed the EEOC of its intention not to comply with the subpoena. In any event, for reasons that do not appear in the record, the EEOC voluntarily revoked its administrative subpoena in Hale's case.

On February 13, 1997, roughly ten months before the new subpoena response date, the District Director issued a determination on Hale's charge, finding that Bell Atlantic "discriminated and continues to discriminate against the Charging Party and other affected females on the basis of sex [and] pregnancy." That same day, the District Director also issued a determination of reasonable cause on Page's charge, finding that Bell Atlantic's application of the "facially neutral service system has a disparate impact on Charging Party and a class of similarly situated females who took pregnancy leave prior to 1979." In response, Bell Atlantic instituted the instant action.

On May 9, 1997, the EEOC moved to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1), Fed.R.Civ.P., on the ground that Bell Atlantic's pre-enforcement suit is not ripe. In response, on May 23, 1997, Bell Atlantic objected to that motion and filed a cross-motion for judgment on the pleadings pursuant to Rule 12(c), Fed. R.Civ.P. In essence, Bell Atlantic claims that *it raises a federal question cognizable under* the Administrative Procedure Act ("APA"), 5 U.S.C. § 702 et seq., and that, in the alternative, because the EEOC's issuance of the reasonable cause determination and its investigation of the Hale and Page complaints is beyond its delegated statutory authority, there is federal question jurisdiction pursuant to the exception to ripeness announced in *Leedom v. Kyne,* 358 U.S. 184, 188, 79 S.Ct. 180, 183–84, 3 L.Ed.2d 210 (1958). The motions were argued orally and taken under advisement with the parties invited, but not required, to file additional briefs. *See Bell Atlantic Cash Balance Plan v. EEOC,* No. 97–330–A (E.D.Va. August 1, 1997) (order). The parties filed further briefs and the matter is now ripe for resolution.[2]

---

**2.** Both parties' supplemental briefs were filed    untimely. Nevertheless, they are considered

## II

The Declaratory Judgment Act, 28 U.S.C. § 2201,[3] permits federal courts to issue declaratory judgments only in cases of "actual controversy." *See Aetna Life Ins. Co. v. Haworth,* 300 U.S. 227, 239–40, 57 S.Ct. 461, 463–64, 81 L.Ed. 617 (1937); *Charter Fed. Sav. Bank v. Office of Thrift Supervision,* 976 F.2d 203, 208 (4th Cir.1992), *cert. denied,* 507 U.S. 1004, 113 S.Ct. 1643, 123 L.Ed.2d 265 (1993).[4] In other words, § 2201, by itself, is not a basis for federal court jurisdiction. *See, e.g., Schilling v. Rogers,* 363 U.S. 666, 667, 80 S.Ct. 1288, 1290, 4 L.Ed.2d 1478 (1960); *Delavigne v. Delavigne,* 530 F.2d 598, 601 (4th Cir.1976). Accordingly, a request for declaratory relief does not itself confer subject matter jurisdiction on a federal court if such jurisdiction would not otherwise exist. *See, e.g., Skelly Oil Co. v. Phillips Petroleum Co.,* 339 U.S. 667, 671, 70 S.Ct. 876, 878–79, 94 L.Ed. 1194 (1950). So, when, as here, there is no diversity of citizenship between the parties, the existence of subject matter jurisdiction depends on the presence of a federal question, namely, whether any of plaintiffs' claims "arise under" federal law. See 28 U.S.C. § 1331. And in this regard, it is well established that there is no justiciable controversy when the federal question at issue is either moot or not ripe. "Justiciability concerns not only the standing of litigants to assert particular claims, but also the appropriate timing of judicial intervention." *Renne v. Geary,* 501 U.S. 312, 320, 111 S.Ct. 2331, 2338, 115 L.Ed.2d 288 (1991) (citing *Regional Rail Reorganization Act Case,* 419 U.S. 102, 136–48, 95 S.Ct. 335, 354–61, 42 L.Ed.2d 320 (1974)). Put another way, for a federal question to be justiciable, it must be "definite and concrete, touching the legal relations of parties having adverse legal inter-

ests." *Haworth,* 300 U.S. at 240–41, 57 S.Ct. at 464. Accordingly, a federal court does not have subject matter jurisdiction over a federal question brought too early or too late. Inherently, doctrines of mootness and ripeness are mutually exclusive. In the instant action, the doctrine of mootness is not pertinent; the only inquiry is whether the question is ripe.

To prevent premature adjudication, a federal question must not be "unripe." *See Abbott Labs. v. Gardner,* 387 U.S. 136, 148–49, 87 S.Ct. 1507, 1515–16, 18 L.Ed.2d 681 (1967), *overruled on other grounds by Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977); *Charter Federal,* 976 F.2d at 208. In a case challenging administrative action, the doctrine of ripeness requires that, before a federal court assumes jurisdiction, there be "an administrative decision [that] has been formalized and its effects felt in a concrete way by the challenging parties." *Pacific Gas & Elec. Co. v. State Energy Resources Conservation & Dev. Comm'n,* 461 U.S. 190, 200, 103 S.Ct. 1713, 1720, 75 L.Ed.2d 752 (1983) (citing *Abbott,* 387 U.S. at 148–49, 87 S.Ct. at 1515). The determination of ripeness involves two steps. First, a plaintiff must establish that the issues involved are fit for judicial resolution. And, "[a] case is fit for judicial decision where the issues to be considered are purely legal ones and where the agency rule or action giving rise to the controversy is final and not dependent upon future uncertainties or intervening agency rulings." *Charter Federal,* 976 F.2d at 208–09 (citing *Abbott,* 387 U.S. at 149, 87 S.Ct. at 1515–16). Second, a plaintiff must establish that the withholding of judicial review will cause hardship in the case at bar. In this regard, "[t]he

here.

**3.** The Declaratory Judgment Act provides in pertinent part:

> In a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a).

**4.** The Article III requirement that federal courts are competent to consider only actual "cases" and "controversies" arising under the Constitution and laws of the United States prohibits the issuance of mere advisory opinions. *See generally Rescue Army v. Municipal Court of City of Los Angeles,* 331 U.S. 549, 67 S.Ct. 1409, 91 L.Ed. 1666 (1947); *Hayburn's Case,* 2 U.S. (2 Dall.) 408, 1 L.Ed. 436 (1792).

hardship prong is measured by the immediacy of the threat and the burden imposed on the petitioner who would be compelled to act under threat of enforcement." *Id.* (citing *Abbott,* 387 U.S. at 153, 87 S.Ct. at 1517–18). It remains to apply these principles to the instant facts.

## A. APA

■ The EEOC contends that no actual controversy exists because it has taken no final agency action. Final agency action is necessary before there is subject matter jurisdiction in a federal district court.[5] Specifically, the EEOC contends that the mere issuance of two determination letters lacks the requisite finality to support jurisdiction under the APA. Bell Atlantic counters that the EEOC's reasonable cause determinations have imposed a substantial burden, requiring Bell Atlantic to respond to charges of discrimination that it believes to be both untimely and meritless. Bell Atlantic's argument is unpersuasive.

As the Fourth Circuit made clear in *Georator Corp. v. EEOC,* 592 F.2d 765, 768–69 (4th Cir.1979), the EEOC's issuance of a determination letter finding reasonable cause to believe that an employer's conduct was discriminatory is not a final order.[6] There, an employer charged with discrimination filed a declaratory judgment suit against the EEOC after being served with an administrative subpoena. There, as here, the EEOC elected voluntarily to withdraw the administrative subpoena, but nonetheless issued a determination of reasonable cause concerning the employee's charge. This determination

then became the focus of the employer's declaratory judgment action. In dismissing the action, the Fourth Circuit held that the EEOC's reasonable cause determination was not final agency action because such determinations alone do not impose legal liability or obligations.[7]

Notwithstanding the apparently dispositive holding of *Georator,* Bell Atlantic contends that the EEOC's two determination letters are final orders in the circumstances of this case. Specifically, Bell Atlantic relies on precedent holding that the principle of finality in administrative law should not be "governed by the administrative agency's characterization of its action, but rather by a realistic assessment of the nature and effect of the order sought to be reviewed." *Fidelity Television, Inc. v. FCC,* 502 F.2d 443, 448 (D.C.Cir.1974).[8] It is true, to be sure, that an agency's characterization of its action is not, by itself, dispositive of whether it is final agency action. Yet this principle is of no avail to Bell Atlantic here, as it is pellucidly clear that the EEOC's determination letters are not final orders because they impose no legal liability or obligations on Bell Atlantic. In fact, before any legal liability can be imposed on Bell Atlantic under Title VII, the EEOC or the aggrieved employee must file an enforcement suit in district court. *See Alexander v. Gardner–Denver Co.,* 415 U.S. 36, 44–45, 94 S.Ct. 1011, 1017–18, 39 L.Ed.2d 147 (1974); *Georator,* 592 F.2d at 768–69 ("The [EEOC's] determination of reasonable cause ... has no effect until either the [EEOC] or the charging party brings suit in

---

**5.** *See* 5 U.S.C. § 704 ("[F]inal agency action for which there is no other adequate remedy in a court [is] subject to judicial review. A preliminary, procedural, or intermediate agency action or ruling not directly reviewable is subject to review on the review of the final agency action.").

**6.** *See also Nealon v. Stone,* 958 F.2d 584, 588 (4th Cir.1992) ("[T]he passage of time simply does not, and cannot, transform a reasonable cause determination into a final compliance order.").

**7.** Specifically, the Fourth Circuit observed:

> No such finality exists with respect to the EEOC's determination of reasonable cause.

> Standing alone, it is lifeless, and can fix no obligation nor impose any liability on the plaintiff. It is merely preparatory to further proceedings. If and when the EEOC or the charging party files suit in district court, the issue of discrimination will come to life, and the plaintiff will have the opportunity to refute the charges.

> *Georator,* 592 F.2d at 768.

**8.** *See also Isbrandtsen Co. v. United States,* 211 F.2d 51, 55 (D.C.Cir.), *cert. denied,* 347 U.S. 990, 74 S.Ct. 852, 98 L.Ed. 1124 (1954) ("Whether or not the statutory requirements of finality are satisfied in any given case depends not upon the label affixed to its action by the administrative agency but rather upon a realistic appraisal of the consequences of such action.").

district court."). Until an enforcement suit is brought, Bell Atlantic cannot be compelled to change its employment practices, to provide remedies for discrimination, to disclose documents to the EEOC, or to pay monetary penalties for noncompliance with Title VII. While an investigation by the EEOC may reasonably cause a company like Bell Atlantic to incur some burdens [9] during the course of that investigation, such burdens are not indicia of final or reviewable agency action; they do not amount to the type of concrete, significant hardship that triggers judicial review. *See DRG Funding Corp. v. Secretary of Housing and Urban Dev.*, 76 F.3d 1212, 1214 (D.C.Cir.1996) (stating that agency action is final when it has a " 'direct and immediate ... effect ... on day-to-day business' " (quoting *Abbott*, 387 U.S. at 152, 87 S.Ct. at 1517)). Hence, because the EEOC's issuance of two determination letters creates no legal liabilities or obligations, this cannot be considered final agency action in these circumstances.[10]

**B. The *Leedom v. Kyne* Exception to Ripeness**

■ Alternatively, Bell Atlantic contends that federal question jurisdiction exists pursuant to a narrow exception to the ripeness doctrine, which permits judicial review of nonfinal agency actions when the agency acts in clear derogation of its express statutory authority. *See Leedom v. Kyne*, 358 U.S. 184, 188, 79 S.Ct. 180, 184, 3 L.Ed.2d 210 (1958) (holding that the National Labor Relations Board had acted "in excess of its delegated powers and contrary to a specific prohibition of the [National Labor Relations] Act"); *Gracey v. International Broth. of Elec. Workers, Local 1340*, 868 F.2d 671, 674 n. 1 (4th Cir.1989) ("If an agency acts in clear derogation of its statutory authority, a court need not wait for the underlying proceedings to conclude to intervene."). Since its inception, the *Leedom v. Kyne* exception has been narrowly construed.[11] As the District of Columbia Circuit aptly put it, "[t]he Supreme Court and others have sought to confine [the exception] to agency error so extreme that it may be viewed as jurisdictional or nearly so." *Griffith*, 842 F.2d at 493. Put another way, there can be no judicial review of an agency's preliminary administrative action unless there is "a 'strong and clear' demonstration that a 'clear, specific and mandatory provision of the Act' has been violated." *Newport News Shipbuilding*, 633 F.2d at 1081. Accordingly, federal question jurisdiction under the *Leedom v. Kyne* exception is inappropriate when the existence of an agency transgression is too uncertain. *See Associated Builders and Contractors, Inc. v. Irving*, 610 F.2d 1221, 1227–28 (4th Cir.1979) (denying jurisdiction under the *Leedom v. Kyne* exception because "the statute is not so clear that we can say with reasonable certainty" that the agency exceeded its delegated authority in its construction of the statute, "al-

**9.** For instance, companies investigated for discrimination charges may experience a drop in the value of their stock, difficulty in recruiting new employees, low employee morale, or additional legal fees in connection with the investigation.

**10.** Initially, Bell Atlantic also contended that the EEOC's administrative subpoena supported judicial review under the APA. In light of the EEOC's decision to withdraw the subpoena, Bell Atlantic's contention is now moot. Moreover, even assuming that the EEOC's administrative subpoena were to remain outstanding, it would not support a claim of federal jurisdiction. It is well established that before an agency resorts to judicial enforcement of its own administrative subpoena, an anticipatory action by a party challenging the validity of the subpoena is not ripe; the subpoenaed party is not harmed by the absence of judicial review in this context since it has an adequate opportunity to object if, and when, the agency files an action to enforce its subpoena. *See, e.g., Shea v. Office of Thrift Supervision*, 934 F.2d 41, 45–46 (3d Cir.1991); *In re Ramirez*, 905 F.2d 97, 98 (5th Cir.1990). *See generally* 13A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice & Procedure* § 3532.6 (1990). In other words, persuasive authority suggests that, in order to challenge the EEOC's subpoena, Bell Atlantic must refuse to comply and then await the filing of an enforcement action by the EEOC.

**11.** *See, e.g., Boire v. Greyhound Corp.*, 376 U.S. 473, 480–81, 84 S.Ct. 894, 898–99, 11 L.Ed.2d 849 (1964); *Newport News Shipbuilding and Dry Dock Co. v. NLRB*, 633 F.2d 1079, 1081 (4th Cir.1980); *Griffith v. Federal Labor Relations Authority*, 842 F.2d 487, 493 (D.C.Cir.1988); *National Ass'n of Government Employees v. Federal Labor Relations Auth.*, 830 F.Supp. 889, 896 (E.D.Va.1993).

though [the agency] well may have been wrong").[12]

These principles, applied here, compel the conclusion that the error alleged by Bell Atlantic is not subject to review under *Leedom v. Kyne*. In brief, it is simply not pellucidly clear that the EEOC's reasonable cause determinations exceeded its authority under Title VII; the parties' competing contentions make that readily apparent. For its part, Bell Atlantic contends that the EEOC exceeded its statutory authority by investigating charges of discrimination that are facially invalid. This facial invalidity, according to Bell Atlantic, arises from the fact that the discrimination charges are based on behavior that occurred more than twenty years ago, namely, the calculation of net-service credits for pregnant employees in the 1970s. Specifically, Bell Atlantic contends that its denial of service credit to Hale and Page prior to the PDA's effective date was lawful,[13] that the PDA does not apply retroactively,[14] and that it changed the method of calculating service

credit in order to comply with the requirements of the PDA once that law was enacted.[15] Thus, Bell Atlantic maintains that Hale and Page waited too long to file their charges.

On the other hand, the EEOC contends that it did not act in obvious derogation of a "clear, specific, and mandatory provision" of Title VII because the two charges of discrimination were facially valid. In particular, the EEOC points to the text of the charges themselves. In their charges, Hale and Page did not complain about the 1971 and 1974 denial of their seniority credit; rather, they complained about the criteria currently used by Bell Atlantic to determine their eligibility for pension benefits. In support of its contention, the EEOC cites a Ninth Circuit decision upholding a claim of discrimination on virtually identical facts. *See Pallas v. Pacific Bell*, 940 F.2d 1324 (9th Cir.1991), *cert. denied*, 502 U.S. 1050, 112 S.Ct. 916, 116 L.Ed.2d 815 (1992).[16] Accordingly, contrary

---

**12.** *See also General Fin. Corp. v. FTC*, 700 F.2d 366, 370 (7th Cir.1983) (finding no subject matter jurisdiction because, in contrast to *Leedom v. Kyne*, "it is uncertain whether the [FTC] exceeded its authority under" the McCarran–Ferguson Act and the FTC Act).

**13.** *See General Electric Co. v. Gilbert*, 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976) (holding that an employer's exclusion of pregnancy-related benefits from coverage under a disability plan was valid under Title VII). The PDA was enacted directly in response to the Supreme Court's decision in *Gilbert*.

**14.** *See e.g., Condit v. United Air Lines, Inc.*, 631 F.2d 1136, 1139 (4th Cir.1980) (holding that the PDA cannot be applied retroactively to impose liability for activities that occurred prior to the Act's effective date); *Fields v. Bolger*, 723 F.2d 1216, 1219 n. 4 (6th Cir.1984) (holding that the PDA "was intended to be prospective only in application"); *Schwabenbauer v. Board of Educ.*, 667 F.2d 305, 310 n. 7 (2d Cir.1981) ("Since Congress provided that [the PDA] would take effect on the date of its enactment ... there is no basis for applying the 1979 amendment to Schwaubenbauer's experiences in 1968–72.").

**15.** Bell Atlantic alleges that the charges filed by Hale and Page obviously exceeded the time limit for filing such charges set forth in Title VII and that, as a consequence, the EEOC has overstepped it statutory authority. Under Title VII, an employee has 180 days from the date of the employer's alleged wrongs to file a discrimination charge with the EEOC. *See* 42 U.S.C. § 2000e-5. A Title VII claimant in a deferral state, such as the Commonwealth of Virginia,

however, has 300 days in which to file a charge with the EEOC. *See* 42 U.S.C. § 2000e-5(e)(1); 29 C.F.R. §§ 1601.13(a)(4)(ii)(A) and 1601.74(a). In the case at bar, Bell Atlantic contends that the charges were untimely because they alleged adverse employment actions that occurred in the 1970s, namely, the unequal treatment of Page and Hale on the basis of their pregnancies. Thus, Bell Atlantic asserts that the EEOC plainly exceeded its statutory authority by investigating charges untimely on their faces by roughly twenty years. *See EEOC v. Shell Oil Co.*, 466 U.S. 54, 65, 104 S.Ct. 1621, 1629, 80 L.Ed.2d 41 (1984) (holding that § 706(b) of Title VII, 42 U.S.C. § 2000e-5(b), requires that the EEOC investigate only valid charges); *EEOC v. City of Norfolk Police Dept.*, 45 F.3d 80, 83 (4th Cir.1995) (holding that " 'a charge which shows on its face that it is untimely is ... an invalid charge incapable of invoking EEOC's investigatory powers' ") (quoting *EEOC v. Ocean City Police Dept.*, 820 F.2d 1378 (4th Cir.1987) (en banc), *vacated*, 486 U.S. 1019, 108 S.Ct. 1990, 100 L.Ed.2d 223 (1988)).

**16.** *In Pallas*, the plaintiff took a forced pregnancy leave in 1972, prior to the enactment of the PDA. At that time, the employer's benefit policy denied the plaintiff her full seniority credit for the period of her involuntary absence. In 1987, the employer adopted an early retirement benefit policy. To qualify, an employee was required to have at least twenty years of credited service. Although the employer modified its pregnancy leave policy in 1979 to permit employees with pregnancy-related absences to accrue service credit, the plaintiff was not given seniority credit for the period of her 1972 pregnancy leave. Consequently, the plaintiff fell short of the twenty

to Bell Atlantic's emphatic assertion, it is not "apparent" that the two charges in question here are invalid.[17]

Bell Atlantic argues that *Pallas* is clearly wrong because it contradicts the holdings of five Supreme Court decisions. According to Bell Atlantic, these cases stand for the proposition that an employer's present reliance on a facially neutral, bona fide seniority system that nevertheless perpetuates a past act of discrimination, whether that act had been lawful or unlawful at the time, is permissible.[18] *Pallas*, however, was decided after the issuance of four of these five Supreme Court decisions, and it recognized and distinguished the line of reasoning connecting them. It may be that the EEOC will ultimately choose to follow the lead of the Ninth Circuit in finding a basis for distinguishing those decisions. Or, it may be that a court of final authority will agree with the view that Bell Atlantic espouses here. In any event, it cannot be said that only one resolution is obviously correct. Hence, the EEOC cannot be said to be acting in clear derogation of its statutory authority in the present case. Thus, the *Leedom v. Kyne* exception is inapplicable and there is no subject matter jurisdiction in the circumstances.[19]

### III

For the foregoing reasons, the EEOC's motion to dismiss for lack of subject matter jurisdiction should be granted, and Bell Atlantic's motion for judgment on the pleadings

should be denied. Accordingly, this action should be dismissed with prejudice.

An appropriate Order will issue.

---

years necessary to qualify for early retirement. The plaintiff argued, and the Ninth Circuit agreed, that the employer's current reliance on its past leave policy constituted a new act of discrimination in the administration of its early retirement benefits. According to the Ninth Circuit, "[w]hile the act of discriminating against [plaintiff] in 1972 is not, itself, actionable, [the employer] is liable for its decision to discriminate against [plaintiff] in 1987 on the basis of pregnancy." *Pallas*, 940 F.2d at 1327.

**17.** *See also Carter v. American Tel. & Tel. Co.*, 870 F.Supp. 1438 (S.D.Ohio 1994) (applying the reasoning of *Pallas* on similar facts).

**18.** *See American Tobacco Co. v. Patterson*, 456 U.S. 63, 75–77, 102 S.Ct. 1534, 1540–42, 71 L.Ed.2d 748 (1982) (holding that under an employer's bona fide seniority system, there can be no Title VII liability even if the current system perpetuates pre-Title VII lawful discrimination);

*United Air Lines, Inc. v. Evans*, 431 U.S. 553, 560, 97 S.Ct. 1885, 1890, 52 L.Ed.2d 571 (1977) (same); *International Bhd. Of Teamsters v. United States*, 431 U.S. 324, 352–53, 97 S.Ct. 1843, 1863–64, 52 L.Ed.2d 396 (1977) (same); *Franks v. Bowman Transp. Co.*, 424 U.S. 747, 761, 96 S.Ct. 1251, 1262–63, 47 L.Ed.2d 444 (1976) (same). The fifth case on which Bell Atlantic relies, *Lockheed Corp. v. Spink*, is less apposite, as it holds only that amendments to ERISA and the ADEA do not apply retroactively. *See Lockheed Corp. v. Spink*, —— U.S. ——, ——–—— & n. 9, 116 S.Ct. 1783, 1792–93 & n. 9, 135 L.Ed.2d 153 (1996).

**19.** Title VII itself similarly affords no basis for subject matter jurisdiction in this action. That statute provides three separate instances in which a federal district court may hear a Title VII case, none of which is applicable here. *See* 42 U.S.C. §§ 2000e–5(f)(3), 2000e–6(b), and 2000e–16.